STATE OF WEST VIRGINIA

*v.*

JEFF MCARDLE

(No. 13031)

Submitted September 20, 1972.   Decided February 6, 1973.

410

*Wilson, Frame & Rowe, Clark B. Frame,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison, Henry Bowen,* Assistant Attorneys General, for defendant in error.

CAPLAN, JUDGE:

At the April Term, 1970, of the Circuit Court of Monongalia County, the defendant, Jeff McArdle, was indicted for the offense of possession and sale of a "narcotic drug known as Cannabis, and more commonly known as marijuana". Upon the entry of a plea of not guilty he was tried by a jury which found him guilty as charged in the indictment. The court, after refusing a request for a presentence investigation, denied probation and sentenced the defendant to a term of from two to five years in the state penitentiary. It is from the judgment imposing that sentence that this appeal is prosecuted.

In September, 1969, Trooper D. R. Wills, a member of the Department of Public Safety, was assigned to temporary duty in Morgantown, West Virginia for the

purpose of investigating the reported sale and use of marijuana in that area. During that time he met and became fairly well acquainted with the defendant, who at the time was a resident of Morgantown and was sixteen years of age. In his undercover activities, in an effort to assume the appearance of one of the students, Trooper Wills grew a beard and was attired in blue jeans and a sweat shirt.

The evidence is conflicting as to what transpired between Trooper Wills and the defendant. Trooper Wills testified that Jeff McArdle approached him with an offer to sell him "some real good weed". The defendant, on the other hand, testified that Wills asked him on two different occasions to sell him some marijuana before he did finally sell him the package which gave rise to this prosecution. The defendant stated that on each occasion he told Wills that he did not have any marijuana so therefore could not sell him any.

According to the testimony the defendant, McArdle, on the third attempt by Trooper Wills to purchase marijuana from him, recalled an incident which he thought could be profitable. The defendant had just witnessed two young men who were preparing a quantity of marijuana, presumably for use. This occurred in a certain boarding house where these two young men resided. They cut the usable parts of the marijuana plants from the stalks and placed the stalks and other disposable parts of the plant in a brown paper bag which they threw into the garbage can. With this incident in mind, the defendant told Trooper Wills that he had some marijuana for him. He and the trooper walked to the boarding house and the former instructed the latter to wait outside. McArdle then went to the second floor where the garbage can was kept, retrieved the brown bag, removed the disposed of parts of the marijuana plant and placed them in a piece of silver foil which he folded in to a packet. Acknowledging on the stand that he was going to "burn" this fellow, he sold him the packet for $15.00. This version of the happenings of that day did not vary greatly from the

testimony of Trooper Wills although it is assumed that Trooper Wills knew nothing of the disposed of parts of the marijuana plants.

By reason of this sale the defendant was arrested on October 31, 1969 and placed in jail without bail. He was incarcerated over the weekend before he was permitted to be released on bail.

On November 3, 1969 a state policeman filed a petition in the Juvenile Court of Monongalia County charging Jeff McArdle with delinquency. A brief hearing was held at which the prosecuting attorney vigorously requested the court to waive its juvenile jurisdiction and transfer the defendant to the criminal court where he would be treated as an adult. Without any evidence and actually without any hearing the court noting that it had heard of this young man's bad reputation said: "where he is mature enough to do that with which he is charged, that is, possessing and selling marijuana, he is mature enough to be treated as an adult, in the judgment of this Court."

The court thereupon entered an order providing that this defendant be treated as an adult. It is pertinent to note that no notice of this hearing had been given although his parents were present and he was represented by counsel.

Subsequently, at the April Term the defendant was indicted and on April 20, 1970 entered a plea of not guilty. Shortly thereafter the defendant filed a Plea in Abatement and a motion for discovery of exculpatory information which included a request for a sample of the alleged marijuana. Because of the physical incapacity of the prosecuting attorney nothing further was done until June 9, 1970, at which time the prosecuting attorney posted what purported to be a criminal docket. Jeff McArdle's case was to be tried on June 15. It is noted that this defendant's counsel represented defendants in five of the first seven cases waiting for trial. Several motions were then made by the defendant, including a motion for a continuance, for a change of venue and one to quash

the indictment. On June 11 all of these motions were overruled. A Plea in Abatement and the motion for discovery were formally filed and made and were also overruled. In addition, a motion for a change of venue was made and many exhibits in support thereof were offered. This motion was also denied. In this posture the case went to trial and as aforesaid a verdict of guilty was returned by the jury.

While many errors were assigned by the defendant as grounds for reversal of the judgment below, the following assignments control the disposition of this case: (1) The court erred in failing to hold a hearing on the waiver of juvenile jurisdiction which conformed with the requirements of due process of law; (2) The court erred in refusing to allow the defendant to obtain a sample of the substance alleged to be marijuana; (3) The court erred in permitting the admission into evidence of other crimes committed by the defendant which were totally unrelated to the offense of which he was charged; (4) The court erred in giving, over the defendant's objection, state's instruction No. 9 and (5) The court erred in refusing to strike the remarks of the Prosecuting Attorney in his closing argument to the jury upon objection and motion by the defendant.

In relation to the first assignment of error it is noted that the record of the proceedings below includes a transcript of what purports to be a hearing before the court on the waiver of its juvenile jurisdiction. It is contended by the defendant that the court therein failed to meet the requirements of due process of law.

Although, as noted above, there is a transcript in the instant case of a purported hearing, there was, in fact, no hearing at all. An examination of said transcript reveals that there was no meaningful opportunity for the juvenile to be heard; there were vague references by the prosecuting attorney and the court to a former assault charge against the juvenile; no evidence was offered of such charge and, in fact, the remarks of defense counsel

alleging that the other party had struck the first blow went unanswered; there were innuendoes by the court and prosecutor which, without any proof, assumed the guilt of the defendant; and there were no findings of fact or any substantial reasons given for waiver of juvenile jurisdiction. The court on its own preconceived notion of this defendant's reputation arbitrarily waived its juvenile jurisdiction and determined that he should be tried as an adult.

Waiver of juvenile jurisdiction is a critical point in criminal proceedings against a juvenile. *Kemplen v. Maryland,* 428 F.2d 169. In that case the court said "In order that child, parents, and counsel may have a reasonable opportunity to prepare the child's case as to waiver, due process demands that they be given adequate notice of the nature of the proceeding, its date, and the charges to be considered." Even though, in the instant case, the defendant's parents were present at the purported hearing and counsel was there, it is undisputed that no actual notice was given and no opportunity whatever was afforded to prepare a defense to the proposed waiver of juvenile jurisdiction. That no adequate notice was afforded the defendant is supported by the undisputed fact that the waiver hearing was held on the same day that the petition charging him with delinquency was filed. See *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527, wherein it was held that a juvenile must be afforded adequate written notice informing him and his parents of the specific issues so that they may have sufficient time to prepare for the hearing.

In *Kent v. United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84, the court waived its juvenile jurisdiction without an adequate hearing and without making findings which would justify such waiver. The Supreme Court held the waiver invalid. Certainly, juveniles should not be immune from appropriate disciplinary action when they violate the law, but juvenile proceedings, ostensibly under the philosophy of *parens patriae,* do not permit procedural arbitrariness. Under the guise of parental protection the state has, on occasion, denied the juvenile the

constitutional guarantees afforded to an adult. This has taken the form of the denial of counsel and, as in this case, the denial of proper notice and a meaningful hearing, none of which should be permitted. It was held in *Kent, supra,* and we agree, that the waiver of juvenile jurisdiction is subject to review by an appellate court and if that court finds that the waiver was inappropriate the conviction must be vacated. We find the waiver of juvenile jurisdiction inappropriate in this case.

Approximately two months prior to the trial of this case the defendant filed a motion for discovery of exculpatory information in the possession of the state. That motion contained a request that the defendant be furnished a sample of the substance allegedly purchased from him. It is to the court's action in overruling this motion that this assignment of error is addressed.

It is the position of the state that Code, 1931, 62-1B-2, as amended, which provides that "the court may order the prosecuting attorney to permit the defendant to examine * * *" is discretionary and that the court acted within its discretion in disallowing the defendant's request. The state further asserted that its expert witness examined the substance in question finding it to be marijuana, which finding the defendant had the opportunity to attack on cross examination.

In view of the testimony adduced in this case and the theory of defense relied upon by the defendant we are unable to agree with the state's position. The defendant bases his defense on his testimony wherein he related that he sold to Trooper Wills only the stalks and parts of the marijuana plant that are not illegal under Code, 1931, 60A-1-101 (n), as amended. He should have been afforded an opportunity to have an expert of his choice conduct a thorough examination of the substance and make whatever tests said expert may have deemed necessary so that he could have offered meaningful testimony in support of his theory of the case. The only test offered by the state proving this to be marijuana does

not distinguish the illegal parts of the plant from the legal. In other words, the substance offered in evidence and tested by the chemist in the Department of Public Safety was doubtless shown to be marijuana but it could very well have been the part of the plant which is not illegal under the aforesaid statute. Dr. Earl Core, a qualified biologist, who appeared on behalf of the defendant, was permitted to make a cursory examination of the substance on the stand, but this was not adequate. The defendant should have been permitted to have his expert make laboratory tests and whatever chemical tests he deemed necessary.

In *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, the Supreme Court, pertinent to the instant issue, said that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt. Holding that a fair trial for the accused is essential, the following succinct statements are found in the opinion: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. * * * A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." See *Mooney v. Holohan,* 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791, 98 A.L.R. 406.

Applying these principles to this issue we find that the failure to permit the defendant an opportunity to adequately examine and test the substance does not comport with the basic standard of fairness to which an accused is entitled.

During the trial the principal witness for the state was induced by interrogation by the prosecuting attorney to testify to the commission by the defendant of other offenses, totally unrelated to the one of which he is charged. Trooper Wills, over the objection of the

defendant, was permitted to testify that the defendant had told him that "he had got drunk on wine". Also, he was permitted to relate that the defendant told him that "after drinking wine, and already being drunk, he took a bunch of downs. Downs is a word used by people who travel in drug circles to refer to a depressive drug." On a further occasion this witness was permitted to testify that after the wine and downs, the defendant stated that he had smoked a considerable amount of marijuana and was "really way out". Although the defendant objected vigorously to this line of questioning, the witness was permitted to continue in detail. These offenses were repeated to the jury on three separate occasions. Introduction of this testimony is assigned as error.

This Court consistently has held that in the absence of an effort by the defendant to prove good character, evidence of the commission of other crimes is not admissible. *State v. Miller,* 75 W.Va. 591, 84 S.E. 383. In *State v. Walker,* 92 W.Va. 499, 115 S.E. 443 the Court held, as in *Miller,* that evidence of other offenses may not be introduced into evidence and that the defendant, by going on the witness stand, has not opened his reputation for general good character to an attack. See also *State v. Webb,* 99 W.Va. 225, 128 S.E. 97.

In *State v. Seckman,* 124 W.Va. 740, 22 S.E.2d 374 the Court, commenting on the admissibility of evidence unrelated to the crime of which he is charged, said: "The State can not introduce evidence 'not connected with the crime for which the accused is being tried, for the purpose of showing his bad character, until the accused has first put his own character in issue by attempting to prove a previous good character.' *State v. Graham,* 119 W.Va. 85 Pt. 1, Syl., 191 S. E. 884; *State v. Burnette,* 118 W. Va. 501, 190 S.E. 905; *State v. Miller,* 75 W.Va. 591, 84 S. E. 383, 384." In the *Seckman* case the Court quoted from other cases noting that there is no possible justification for the introduction into evidence of other unrelated offenses and that such practice constitutes a flagrant violation

of the fundamental principles of fairness. See also *State v. Simmons,* 148 W.Va. 340, 135 S.E.2d 252.

Applying the principles ennunciated in the above cited cases, we are of the firm opinion that the evidence complained of in the instant case is not admissible and that the court's action in permitting such evidence, the only purpose of which could be to inflame the jury, constitutes reversible error.

Over the objection of the defendant, the court gave State's Instruction No. 9, the giving of which is assigned as error. This instruction, in purporting to define Cannabis to the jury, necessarily implies that all parts of Cannabis are illegal. The defendant objected, noting that the instruction as given constitutes a totally inadequate description of Cannabis. We are in agreement with the position of the defendant. Marijuana is defined in Code, 1931, 60A-1-101 (n) and such definition excludes from illegality the mature stalks of the plant and, among other things, sterilized seed of the plant which is incapable of germination. In offering such instruction to the jury these exclusions should have been noted. This is particularly true when considering the theory of defense forwarded by the defendant. An instruction to the jury designed to define a substance which is defined by statute must include all of the elements of the statutory definition. A further principle concerning instructions is that a party should be permitted to fully offer his theory of the case if warranted by the evidence. Furthermore, relating to instructions and consistently followed by the courts is the principle that an instruction which is misleading and misstates the law constitutes reversible error. See *State v. Travis,* 139 W.Va. 363, 81 S.E.2d 678; *Yates v. Mancari,* 153 W.Va. 350, 168 S.E.2d 746; and *Sydenstricker v. Vannoy,* 151 W.Va. 177, 150 S.E.2d 905.

In the instant case, as noted, the defendant contended that he sold the parts of a marijuana plant that were excluded from illegality by the statute. If the jury were permitted to be instructed as they were by State's

Instruction No. 9 they could find the defendant guilty of the offense charged even though he sold mature stalks of the plant or sterilized seed incapable of germination. These parts of the plant, of course, are not illegal under the law and this assignment of error is meritorious.

The final assignment of error concerns the propriety of the remarks of the prosecuting attorney in his closing argument to the jury. We have examined carefully the remarks and actions of the prosecutor and have found them to be highly questionable. However, upon mature consideration, it is the opinion of a majority of the Court that such remarks and actions, though not laudable, do not constitute reversible error.

In view of the errors discussed herein and found to be reversible and of the many other errors evidenced in the record, the judgment of the Circuit Court of Monongalia County is reversed, the verdict is set aside and the case is remanded to that court for proceedings not inconsistent with the views expressed herein.

Judges Carrigan and Kessel participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Judges Sprouse and Neely did not participate in the consideration or decision of this case.

*Reversed and remanded.*