STATE OF WEST VIRGINIA

*v.*

KATHERINE WALLACE SMITH

(No. 13496)

Decided April 1, 1975.

*Nichols & Skinner, John C. Skinner, Jr.,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David P. Cleek,* Assistant Attorney General, for defendant in error.

CAPLAN, JUSTICE:

Katherine Wallace Smith was indicted by the grand jury of the Circuit Court of Berkeley County for the felony of possessing, with intent to deliver, a controlled substance, to-wit, lysergic acid diethylamide, commonly known and sometimes hereinafter referred to as LSD. After a trial by jury on said charges she was found guilty and sentenced to confinement in the Women's Penitentiary at Pence Springs for a term of not less than one nor more than five years. Her motion to set aside the vedict and grant a new trial was denied and she prosecutes this appeal.

It appears from the record that on September 19, 1972 Troopers Lefler and Outman, as undercover agents for the Department of Public Safety, were engaged with other members of the department in an investigation of and a search for narcotics at the Raymond Durboraw, Jr. farmhouse located in a rural area of Berkeley County. These troopers, dressed in "hippie" garb, were posted at an entrance to the area around the farmhouse. The defendant, Katherine Wallace Smith, was driving an automobile in which Richard Warden, the owner thereof, was riding as a passenger. As they approached the entrance the troopers motioned the car toward them and when the car was a few feet away the officers testified that Warden said "There's pigs everywhere. Hide the stash." The troopers testified that Warden then reached down between his legs under the seat at which time Trooper Lefler immediately removed Warden from the car at gun point. He then instructed defendant Smith to keep her hands on the steering wheel and to exit from the car on the passenger side which she did. Each trooper testified that prior to the search the defendant was advised of her rights. They then searched the car for a weapon but none was found.

During the search Trooper Lefler testified that he found a brown paper bag with a plastic bag inside of it which contained pink tablets. The tablets were clearly visible. Trooper Lefler then asked Miss Smith if he could

search the car and he testified that defendant Smith answered in the affirmative. At the trial counsel for the defendant objected to this testimony and strenuously objected for lack of a *voir dire* hearing to Trooper Lefler's testimony wherein he testified that Katherine Smith told him (1) that the tablets were acid; (2) that she had one "set of works" in her purse; (3) to take the diet pill and match box containing marijuana from her purse; (4) that she had gotten the LSD that evening at a bar called the Pub in Hagerstown, Maryland; (5) that she and Warden had picked up the LSD and had driven it to the isolated farm; and (6) that she feared for her life if she told from whom they obtained the acid. At the conclusion of Trooper Lefler's direct testimony the defendant moved for a mistrial on the ground that the court had failed or refused to conduct a *voir dire* hearing on the voluntariness and therefore the admissibility of the confession of Katherine Wallace Smith. This motion was denied by the court.

Trooper Outman, the other undercover agent, repeated the statements made to Trooper Lefler by Katherine Wallace Smith. The motion for a mistrial was renewed at the close of the state's case and at the close of all of the evidence. These motions also were denied.

Corporal J.D. Smith testified that he received the pink tablets from Lefler on September 19, 1972, placed them in the evidence locker at the Martinsburg State Police Barracks and delivered them back to Lefler on September 21, 1972. Lieutenant Barber, a state police chemist, testified that he received the tablets from Lefler on September 22, 1972 and that he tested them and found them to be lysergic acid diethylamide. Lieutenant Barber testified that he had used sixty-one tablets from each bag to conduct his tests and that he submitted fifteen tablets from each bag to the defense counsel for examination.

Richard Warden, the first defense witness, who was the owner and passenger of the car where the LSD was

found, testified that the LSD was his and denied that Katherine Wallace Smith had anything to do with the pills. He testified on cross examination that the LSD was in the car prior to the time that the defendant entered it. Katherine Wallace Smith testified that she knew nothing of the LSD in Warden's car or that she ever possessed such tablets. She said that the troopers approached the car with guns drawn and ordered her and Warden from the car and then searched it. She denied that she made the confession attributed to her and denied that she had been advised of her constitutional rights until just prior to her transportation from the farm.

Upon this appeal the defendant relies upon the following assignment of errors: (1) the trial court erred in refusing to conduct a *voir dire* examination to determine the voluntariness of the statements attributed to the defendant prior to the admission thereof in evidence; (2) the trial court erred in refusing to require the state to turn over to the defendant any exculpatory evidence it had in its possession; (3) the trial court should have suppressed State's Exhibit No. 1, the drugs which were found in the *Warden* automobile, on the ground that it was obtained as the result of an unlawful search; and (4) the conduct of the trial denied the defendant a fair trial.

The first assignment of error refers to the testimony of Trooper Lefler wherein he related certain incriminating statements made by the defendant, Katherine Wallace Smith, at the time the drugs were seized. That such statements were incriminating cannot successfully be denied. The defendant, according to the testimony of Trooper Lefler, without equivocation, admitted that she and Warden had obtained the LSD tablets in a bar in Hagerstown, Maryland; that they had brought them to this isolated farm; and that she was afraid to name the person from whom she had gotten such drugs. Further, she volunteered that she had several articles in her purse for the possession of which she could be prosecuted.

On several occasions prior to the adducing of this testimony from Trooper Lefler, counsel for the defendant interposed objections to the questions which called for testimony reflecting statements made by the defendant to witness Lefler. On each occasion counsel requested the court to conduct a hearing outside the presence of the jury to determine the voluntariness of the statements purported to have been made by the defendant and the admissibility of such evidence. Each motion for such *voir dire* examination was overruled, which action, says the defendant, constitutes reversible error.

If the statements of the defendant, as related by Trooper Lefler from the witness stand, constitute a confession, then the clear and unequivocal language of the Court in *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966) is controlling and the failure of the trial court to determine out of the presence of the jury the voluntariness of such confession is reversible error. See *Spaulding v. Warden*, (Decided March 18, 1975); *State v. Vance*, 146 W. Va. 925, 124 S.E.2d 252 (1962); *State v. Mayle*, 108 W. Va. 681, 152 S.E. 633 (1930); and *State v. Richards*, 101 W. Va. 136, 132 S.E. 375 (1926). Such determination must be made by the trial court before a confession may be heard by a jury whether the defendant requests the hearing or not. This is evidenced by the following language of Syllabus Point No. 1 of *Fortner, supra*:

> It is the mandatory duty of a trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence, and the failure to observe this procedure constitutes reversible error.

The United States Supreme Court, in *Jackson v. Denno*, 378 U.S. 368 (1964), clearly demonstrates the extreme importance which courts attribute to the question of voluntariness of a confession, as follows:

668

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Richmond, 365 US 354, 5 L. ed 2d 760, 81 S Ct 735, and even though there is ample evidence aside from the confession to support the conviction. Malinski v. New York, 324 US 401, 89 L ed 1029, 65 S Ct 781; Stroble v. California, 343 US 181, 96 L ed 872, 72 S Ct 599; Payne v. Arkansas, 356 US 560, 2 L ed 2d 975, 78 S Ct 844. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."

The remaining question in resolving this assignment is whether the statements of the defendant, alluded to above, constitute a confession so as to come within the above quoted syllabus point. Although the statements of the defendant were not made by her from the witness stand, they were related to the jury by a witness. It was then the prerogative of the jury to believe or disbelieve the witness. If the jury chose to believe the witness, it would necessarily find the defendant guilty of illegal possession of a controlled substance. Not only did the defendant's statements incriminate her to that extent, she even admitted to the possession of marijuana and "one set of works", which is evidence that she might be a user of heroin.

Certainly such statements were just as incriminating and damaging to the defendant, if believed, as would be a written or oral confession. If such statements are to be put before a jury for its evaluation and appraisal, is it not essential, as noted in *Jackson v. Denno, supra,* to determine before such presentation, whether the statements were voluntarily made? We answer in the affirma-

tive and hold, in accordance with the herein cited and quoted authorities, that it was reversible error in this case to have admitted such statements without first having permitted a determination of the voluntariness thereof out of the presence of the jury.

The State takes the position that the statements of the defendant, as related by Trooper Lefler, were only admissions made during a conversation and that the protective procedures required to determine the voluntariness of a confession were not available to this defendant. The United States Supreme Court has held in *Miranda v. Arizona*, 384 U.S. 436 (1966), in relation to the admissibility of statements made by one being interrogated by the police, that no distinction can be drawn between statements which are direct confessions and statements which amount to admissions of part or all of an offense. *Cf. Escobedo v. Illinois*, 378 U.S. 478 (1964). We find this position of the State untenable.

The defendant alleges as error the court's refusal to require the state to turn over to the defense any exculpatory evidence it had. Cited in support of this assignment are *Brady v. Maryland*, 373 U.S. 83 (1963) and *State v. McArdle*, ____ W. Va.____, 194 S.E.2d 174 (1973). Those cases doubtless reflect the state of the law in regard to this issue and hold that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt. In each of those cases it was found that the prosecution did, in fact, possess exculpatory evidence, material to the guilt or innocence of the defendant and that the trial court refused to require the prosecution to relinquish such evidence upon request.

An examination of the record in this case reveals that no exculpatory evidence was in the possession of the state; nor did the defendant at the trial show the existence of any such evidence. The purpose of the rule expressed in the above cases is to insure the defendant

a fair trial. No unfairness has been shown in this regard and the Court will not reverse a judgment merely because the trial court refused to require the prosecution to answer that it had no such evidence.

The defendant further assigns as error the court's refusal to suppress State's Exhibit No. 1, the drugs which were found in the Warden automobile. A motion to suppress such evidence had been made by the defendant on the ground that the drugs were seized as the result of an unlawful search. A suppression hearing was granted upon defendant's motion, at which the state and the defense were given full opportunity to present witnesses and to conduct examination and cross examination thereof. At the conclusion of this hearing this motion was denied.

In justification of this warrantless search, Trooper Lefler testified that he had good reason to believe that Warden, by reason of his statement, "There's pigs everywhere. Hide the stash", and his sudden motion of reaching under the seat, had a weapon and that he and his partner were in danger of death or severe bodily harm. Reflecting such fears was this testimony: "he made a motion to go under the seat with his hand and I told Trooper Outman he had a gun, to hit the ground ...." He immediately restrained Warden and in his search for a weapon discovered the drugs. This evidence was adduced upon direct examination by counsel for the State.

The court indicated that it was satisfied from the evidence that the search was lawful and gave the defendant the opportunity to prove that it was unlawful. The state, thereby, had the burden of proving the propriety of the search and the defendant was afforded the opportunity to prove it unlawful. No improper burden was placed upon the defendant as contended by her.

Considering all of the circumstances surrounding the subject search and the discovery of drugs, we are of the opinion that the court below did not err in refusing to

suppress such evidence. This opinion is based on the following circumstances as revealed by the record: Trooper Lefler, as an undercover agent, on four or five occasions had purchased narcotics at the Durboraw farm; a general investigation of and search for illegal drugs was in progress at the farmhouse and the immediate area; the officers heard Warden's exclamation, indicating that he was in possession of drugs; and Warden's sudden motion, as herein described, led the troopers to believe that he was reaching for a gun. Thus, the police officers were warranted in searching the car and the discovery of the drugs was the result of a lawful search.

There is no constitutional inhibition against a warrantless search. Both the federal and state constitutions protect only against an unreasonable search. Fourth Amendment to Constitution of the United States; Article 3, Sec. 6, Constitution of West Virginia. See *State v. Angel*, 154 W. Va. 615, 177 S.E.2d 562 (1970). In the circumstances described herein, the officers were justified in making a search of the Warden automobile. During that search the LSD tablets were readily observed by them. Thus, the seizure of the drugs was not the result of an unreasonable search and the admission thereof in evidence was not improper. Cf. *United States v. Robinson*, 414 U.S. 218 (1973); *Gustafson v. Florida*, 414 U.S. 260 (1973).

Finally, the defendant complains that the attitude of the court during the trial created a pervasive atmosphere of hostility toward the defendant and that such conduct deprived her of a fair trial. We have carefully examined the record and find that, although there were some vigorous exchanges between the court and defense counsel, nowhere did the court exhibit an attitude of hostility toward the defendant. In fact, except for the court's refusal to permit a determination of the voluntariness of certain statements attributed to the defendant, for which a new trial will be granted, the court was most fair and impartial. This assignment of error is without merit.

Prejudicial error having been committed as related herein, the judgment of the Circuit Court of Berkeley County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*