In Re: E. H.

(No. 15034)

Decided March 31, 1981.

*Adair D. Jones* for E. H.

*Chauncey H. Browning*, Attorney General, *and Richard S. Glaser, Jr.*, Assistant Attorney General, for the State.

MILLER, JUSTICE:

The principle issue presented in this case is whether a juvenile charged with acts of delinquency which would constitute crimes if he were an adult is entitled to have a jury decide whether he should be transferred to the criminal jurisdiction of the court when the State files a motion to transfer under W. Va. Code, 49-5-10 (1978).

The juvenile, E.H., was charged under the juvenile jurisdiction of the Circuit Court of McDowell County with committing the offenses of kidnapping, armed robbery and grand larceny. The juvenile was 17 years old at the time of the offense and at the time of the proceedings in question. Following a detention hearing on June 5, 1980, the juvenile was ordered to be held in the juvenile detention center in Princeton, Mercer County, in lieu of $10,000 bond. The prosecuting attorney petitioned for transfer to the criminal jurisdiction of the court. The juvenile requested a jury to determine the question of transfer, citing W. Va. Code, 49-5-6.[1] The motion was denied and the transfer hearing was held before the court without a jury.

Following the hearing, the court found probable cause to believe the juvenile had committed robbery with a deadly weapon, and kidnapping, and ordered the proceeding transferred to the criminal jurisdiction of the court. The juvenile appealed the transfer order under his right to direct appeal provided by W. Va. Code, 49-5-10(f).

The key issue is whether the provisions of W. Va. Code, 49-5-6, mandate a jury trial at a transfer hearing because there are "questions of fact" involved in a transfer hearing. A second contention is made that under Article III, Section 10 of our Constitution a right to trial by jury is required for a transfer hearing.

## I.

The State's response consists essentially of two points. First, the jury trial provision in W. Va. Code, 49-5-6, was enacted prior to the existence of a transfer hearing, so that the jury trial provision was not intended at its inception to include the transfer issue. Second, the transfer statute, W. Va. Code, 49-5-10 (1978), providing for transfer determination by "the court," when contrasted with the adjudication statute, W. Va. Code, 49-5-11, which provides at the adjudicatory hearing a right to jury with the language "the

---

[1] W. Va. Code, 49-5-6, states:

"In a proceeding under this article, an interested person may demand, or the judge of his own motion, may order a jury of twelve persons to try any question of fact."

court or jury," indicates a clear legislative intent to exclude a jury at a transfer hearing.

The provisions of W. Va. Code, 49-5-6, that "[i]n a proceeding under this article, an interested person may demand, or the judge of his own motion, may order a jury of twelve persons to try any question of fact," can be traced directly back to our original juvenile act. In the 1915 Acts of the Legislature, Ch. 70, in Section 2, this provision is found:

> "In all trials under this act any person interested therein may demand a jury of twelve persons, or the judge of his own motion may order a jury of the same number to try the case."

This identical language was incorporated in the 1931 revised Code. W. Va. Code, 49-2-3 (1931). The current language found in W. Va. Code, 49-5-6, was framed as a result of the 1936 Acts of the Legislature, First Extraordinary Session, Ch. 1, W. Va. Code, 49-5-6.[2]

Insofar as our juvenile statutes are concerned, from the first act in 1915, up to 1977, there was no statutory provision for a formal transfer hearing. The basic framework was that the juvenile court was given the exclusive jurisdiction, but could decline to exercise that jurisdiction in certain instances in which event the child was proceeded against as an adult criminal.[3] Moreover, it

---

[2] "Section 6. *Trial by Jury*. In a proceeding under this article, an interested person may demand, or the judge of his own motion, may order a jury of twelve persons to try any question of fact."

[3] The 1915 Act, Ch. 70, Section 2, gave original jurisdiction over juveniles under the age of 18. In Section 15 of the Act, children under 18 who were arrested were to be "taken directly before such [juvenile] court . . . or if the child is taken before a justice of the peace or police magistrate, [they] shall inquire into such case . . . and unless . . . of the opinion that no sufficient foundation exists for the charge of . . . delinquency, it shall be the duty of such justice of the peace or police magistrate to transfer the child to the [juvenile] court . . ." However, juvenile jurisdiction could be avoided in the 1915 Act under Section 11 which permitted the juvenile court to allow "such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of city, village, or town ordinances." These provisions remained the same until 1936

is also clear that from our first juvenile act through 1976, the only adversary hearing was the hearing on the initial petition setting forth the acts of delinquency. W. Va. Code, 49-5-7 (1976 Replacement Volume). It was at this hearing where the factual determination of delinquency was made and it was at this proceeding that we accorded the right to demand a jury trial under W. Va. Code, 49-5-6. *Newman v. Wright*, 126 W. Va. 502, 29 S.E.2d 155 (1944); *State ex rel. Marcum v. Ferrell*, 140 W. Va. 202, 83 S.E.2d 648 (1954).

Despite the statutory silence prior to 1977 on the right to a transfer hearing, this Court in Syllabus Point 1 of *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174 (1973), imposed a duty to hold a meaningful transfer hearing:

> "Since waiver of juvenile jurisdiction is a critical stage in criminal proceedings against a juvenile, constitutional due process demand that the child, his parents and his counsel be afforded reasonable notice of the waiver hearing, the charge to be considered, a reasonable opportunity to prepare a defense to such waiver and a meaningful hearing at which evidence on behalf of the juvenile should be permitted."

*McArdle* relied on *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). There was no suggestion in *McArdle* that our statutory right to demand a jury trial was applicable to the transfer hearing, and *Kent* carries no hint of such a right.[4]

---

when Chapter 1 was enacted during the 1st Extraordinary Session of the Legislature. Under Section 3, W. Va. Code, 49-5-3 (1936), juvenile courts were given exclusive jurisdiction over children under age 16 except as to capital offenses. In the 1939 Acts of the Legislature, Ch. 105, Section 3, W. Va. Code, 49-5-3 (1939), the Legislature increased the age to 18 years but provided in Section 14 that a child over 16 at the time the offense was committed who was originally charged in the criminal court could be transferred back to the criminal court, or the juvenile court could decline to take jurisdiction. These two provisions remained in our juvenile law through 1976. W. Va. Code, 49-5-3 and W. Va. Code, 49-5-11 (1976 Replacement Volume).

[4] In *McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L.Ed.2d 647, 91 S.Ct. 1976 (1971), the Court concluded that there was no constitutional right to a jury trial in a juvenile proceeding.

Thus, up to the end of 1976, it can be fairly stated that the statutory right to demand a jury trial under W. Va. Code, 49-5-6, was applicable to the adjudicatory hearing and we had expressed no view as to whether it applied to the judicially-mandated transfer hearing.

In 1977 the Legislature made extensive revisions to our juvenile proceedings. For the first time a formal statutory transfer procedure was adopted, applicable to juveniles who committed an offense which if committed by an adult would be a felony. W. Va. Code, 49-5-10 (1977). The statute went on to delineate the nature of the felony offense which would trigger a transfer hearing. The statute also required that before transfer could be ordered a finding must be made that there are no reasonable prospects for rehabilitation of the juvenile. It concluded with the statement:

> "If the court transfers the case to a criminal proceeding, the court's findings of fact and conclusions of law shall be incorporated within the order." W. Va. Code, 49-5-10(c) (1977).

In 1978 this section was amended in regard to the criteria for transfer of a juvenile to the adult criminal court, but the foregoing provision relative to findings of fact and conclusions of law was retained. W. Va. Code, 49-5-10(e) (1978).[5] It cannot be doubted that traditionally this phraseology that a court make "findings of fact and conclusions of law" is a requirement coming from cases where the court is deciding the issues without a jury. *See Parkway Fuel Service, Inc. v. Pauley*, 159 W. Va. 216, 220 S.E.2d 439 (1975); *Blevins v. May*, 158 W. Va. 531, 212 S.E.2d 85 (1975); *City of Morgantown v. Town of Star City*, 156 W. Va. 529, 195 S.E.2d 166 (1973); Rule 52(a), West Virginia Rules of Civil Procedure. It would seem apparent that the Legislature chose this phraseology to indicate that the court, as distinguished from the jury, was the appropriate

---

[5] W. Va. Code, 49-5-10(e) (1978), states:

"If, after a hearing, the court directs the transfer of any juvenile proceeding to criminal jurisdiction, it shall state on the record the findings of fact and conclusions of law upon which its decision is based or shall incorporate such findings of fact and conclusions of law in its order directing transfer."

entity to make the transfer decision. This view is reinforced by the use of the word "court" throughout the transfer statute.

The very nature of the inquiry at a transfer hearing, involving as it does rather complex issues concerning psychological and rehabilitative factors, is peculiarly within the province of a judge rather than a lay jury, as we have indicated in *Markey v. Wachtel*, 164 W. Va. 45, 264 S.E.2d 437 (1979), which involved the right to a jury trial in an involuntary mental commitment proceeding.

Furthermore, when we view all of the revisions made by the 1977 Acts of the Legislature which have been carried into the 1978 Juvenile Act, it seems apparent that the Legislature did not intend to require a right to a jury trial at every hearing stage even though these hearings could in the language of W. Va. Code, 49-5-6, involve questions of fact.

Under W. Va. Code, 49-5-8 (1978), there is a right to a detention hearing where the court must decide under certain standards whether the juvenile shall be detained in custody. Obviously, there can arise factual questions as to whether the juvenile meets the standards for detention, and to adopt relator's viewpoint would require a jury determination if demanded under W. Va. Code, 49-5-6.

Again, in W. Va. Code, 49-5-9 (1978), there is a right to a preliminary hearing where the court or the juvenile referee must determine if there is probable cause to believe that the child is a delinquent child. Certainly questions of fact are involved at this hearing and a literal reading of W. Va. Code, 49-5-6, would also require a jury here.

In addition, there is the dispositional proceeding under W. Va. Code, 49-5-13, where the court is required to give "precedence to the least restrictive [of a list of alternative dispositions] consistent with the best interests and welfare of the public and the child." In going through the listed alternatives, it is not difficult to perceive that there could be factual questions as to which alternative best suits the child. Again, under a literal reading of Code, 49-5-6, the jury would have to decide. In all of the foregoing sections, the

reference is to the court's finding and determination, which again suggests they are nonjury matters.

It is also not without significance that W. Va. Code, 49-5-11, which covers the adjudicatory hearing where the ultimate determination of the juvenile's guilt is made, provides that if the child denies the allegations in the petition "the court or jury shall proceed to hear evidence." This is the only time in all of the various juvenile hearing sections where this phrase is used. It is obvious that this language does not, in itself, confer the right to demand the jury, and for this reason it has to be read *in pari materia* with W. Va. Code, 49-5-6, which gives the right to demand a jury trial.

This is the reason the Legislature carried W. Va. Code, 49-5-6, from our pre-1977 statute, since it historically provided the right to demand a jury trial at the juvenile's adjudicatory proceeding. We have seen that prior to 1977 the only statutory juvenile hearing was the adjudicatory or guilt-determining hearing. It was only with the 1977 and 1978 revisions that other statutory hearings, such as the detention and probable cause hearings, were created.

We conclude that W. Va. Code, 49-5-6, providing a right to demand a jury trial, must be read in light of its historical background and *in pari materia* with the reference to a jury trial at the adjudicatory hearing contained in W. Va. Code, 49-5-11 (1978), with the result that the right to demand a jury trial is limited to the adjudicatory hearing.

Although it is not crucial to a resolution of this issue, it is not without significance that no commentator who has discussed the purpose and function of the transfer hearing has ever suggested that the issues involved at such hearings should be resolved by a jury.[6] Nor does it appear

---

[6] *See ABA Standards for Juvenile Justice: A Summary and Analysis* §5.4.2 (1977); *ABA Standards Relating to Transfer Between Courts* (Tent. Draft 1977); S. Davis, *Rights of Juveniles*, Ch. 4 (2d ed. 1980); M. Paulsen & C. Whitebread, *Juvenile Law and Procedure*, Ch. VIII (1974); P. Piersma, J. Ganousis, A. Volenik, H. Swanger & P. Connell, *Law and Tactics in Juvenile Cases*, Ch. 11 (3d ed. 1977); Piersma, *Legislative Reform of Juvenile Law*, 11 Clearinghouse Rev. 212 (1977); Vitiello,

that any court has construed a transfer provision to require a jury determination. *See, State v. Strickland*, 532 S.W.2d 912, 921 (Tenn. 1975) (denying transfer jury); Whitebread & Batey, *Transfer Between Courts: Proposals of the Juvenile Justice Standards Project*, 63 Va. L. Rev. 221, 229-38 (1977).

## II.

The juvenile's second argument in support of a right to a jury trial at a transfer hearing is based upon Article III, Section 10 of the West Virginia Constitution, which provides:

> "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

The juvenile argues that his status as a juvenile is analogous to a liberty or property interest and, therefore, when the juvenile is deprived of this status at a transfer hearing by having his case sent to the adult court, he is being deprived of a valuable right. It is quite possible that his juvenile status is in the nature of a statutory entitlement much the same as civil service standing was considered to be a property interest in *Waite v. Civil Service Commission*, ____ W. Va. ____, 241 S.E.2d 164 (1977), and, therefore, would require certain procedural due process protection before the right could be forfeited.[7]

However, as we recently stated in *Markey v. Wachtel*, 164 W. Va. 45, 264 S.E.2d 437, 442 (1979):

---

*Constitutional Safeguards for Juvenile Transfer Procedure: The Ten Years Since Kent v. United States*, 26 DePaul L. Rev. 23 (1976); Whitebread & Batey, *Transfer Between Courts: Proposals of the Juvenile Justice Standards Project*, 63 Va. L. Rev. 221 (1977); Note, *Jury Trials for Juveniles: Rhetoric and Reality*, 8 Pac. L. Rev. 811 (1977); Comment, *The Transfer of Juveniles to Criminal Jurisdiction: State v. M.M.*, 82 W. Va. L. Rev. 687 (1980).

[7] While the liberty and property interest argument was not advanced in *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174 (1973), it is clear that the Court arrived at the same goal through a traditional procedural due process analysis. *See State ex rel. McLendon v. Morton*, 162 W. Va. 431, 249 S.E.2d 919, 924 (1978).

"Even though the concepts of 'property' and 'liberty' found in Article III, Section 10 of our State Constitution and in the Fifth and Fourteenth Amendments to the United States Constitution have been given an expanded meaning, resulting in an extension of procedural due process protection, this Court has not held that Article III, Section 10 requires the right to a jury trial in every instance where a procedural due process right must be accorded. *See, e.g., State ex rel. McLendon v. Morton,* W. Va., 249 S.E.2d 919 (1978); *Waite v. Civil Service Commission,* W. Va., 241 S.E.2d 164 (1977); *North v. West Virginia Board of Regents,* W. Va., 233 S.E.2d 411 (1977); *Beverlin v. Board of Education of Lewis County,* W. Va., 216 S.E.2d 554 (1975)."

*Markey* involved the claim that our Article III, Section 10 should be interpreted to require a jury trial when a person is involuntarily committed to a mental health facility. In *Markey,* we declined to afford a jury and said:

"[A]n important liberty interest is involved in an involuntary commitment proceeding which requires substantial due process protection. Weighed against this private interest is society's interest, acting through the governmental process, to require those who are found to be dangerous by reason of mental disorder to undergo treatment." 164 W. Va. at 45, 264 S.E.2d at 443.

It must be kept in mind that the transfer hearing does not determine issues of culpability. Moreover, the transfer statute, W. Va. Code, 49-5-10 (1978), and W. Va. Code, 49-5-1 (1978), which contains general provisions regarding hearing rights, as well as *State v. McArdle,* 156 W. Va. 409, 194 S.E.2d 174 (1973), provide substantial due process rights that must be accorded a juvenile at a transfer hearing, including: (1) an advance written notice of the grounds relied upon for transfer; (2) an opportunity to be heard in person and to present witnesses and evidence; (3) the right to confront and cross-examine adverse witnesses; (4) a neutral hearing officer; (5) the right to have counsel present including court-appointed counsel if indigent; (6) a record of the evidence of the hearing; (7) findings of fact and

conclusions of law upon which the transfer decision is based; and (8) a right of direct appeal to this Court.

In light of these substantial due process protections and in view of the fact as we have noted in *Markey* and cases therein cited that we have never construed Article III, Section 10 as requiring a jury trial in every instance that a liberty or property interested is affected, we conclude that this provision in our Constitution does not require a jury trial at a juvenile transfer hearing.

## III.

In addition to the request for a jury trial for the transfer hearing, the juvenile raises several other issues regarding the transfer hearing. First, the juvenile argues that the State has failed to sufficiently prove that he committed either armed robbery or kidnapping. The juvenile reads the transfer statute to require "clear and convincing proof" of the commission of the crime, and urges that, under this standard, the State has failed to prove the use of a deadly weapon under the armed robbery charge, and failed to prove kidnapping "with the intent of . . . evading capture or arrest after he or they have committed a crime," under the kidnapping statute, W. Va. Code, 61-2-14a.

Although the transfer statute, W. Va. Code, 49-5-10 (1978), in subsection (a) provides that the general grounds of transfer must be proven by the State by clear and convincing proof, in subsection (d) the statute provides that the specific proof of the commission of a crime at the transfer stage need only be that necessary to establish probable cause. The specific provision of probable cause to believe that a crime has been committed prevails over the general statutory standard of "clear and convincing proof" that applies to the remaining considerations involved in the transfer decision. As we stated in *Elite Laundry Co. v. Dunn*, 126 W. Va. 858, 866, 30 S.E.2d 454, 459 (1944), "where there is repugnancy between provisions of a statute, that provision which is specific must be given preference over that which is merely general." We, therefore, hold that under W. Va. Code, 49-5-10 (1978), at a transfer hearing as a standard of proof the State need only establish that there

is probable cause to believe that a child has committed one of the offenses therein enumerated.

A further consideration is that clear and convincing proof has never been the standard for a probable cause finding. Syllabus Point 1, *State v. Plantz*, 155 W. Va. 24, 180 S.E.2d 614 (1971). We do not believe the Legislature had any intent to change the traditional probable cause standard, particularly when considered in the light of *Breed v. Jones*, 421 U.S. 519, 44 L.Ed.2d 346, 95 S.Ct. 1779 (1975), which indicates that a hearing where the ultimate issue of the juvenile's guilt is settled may bring into play double jeopardy principles, if the case is then transferred to the adult criminal court. *See* note 3, *State ex rel. Smith v. Scott*, 160 W. Va. 730, 238 S.E.2d 223 (1977).

An examination of the factual record reveals ample testimony to support a finding of probable cause to believe that the juvenile committed both offenses and consequently there is no merit to this ground.

Error is also claimed that the transfer motion did not give the juvenile notice that his prior criminal record would be used as a ground for transfer. However, it is clear that the transfer statute, W. Va. Code, 49-5-10 (1978), requires consideration of prior felonies. Even before the 1978 amendments to W. Va. Code, 49-5-10 (1978), we had indicated in *State ex rel. Smith v. Scott* that the juvenile's prior record was one of the relevant factors that a court could consider at a transfer hearing.[8] We find no error on this point.

A final claim of error is that the court did not permit the juvenile's attorney to fully cross-examine a witness for the Department of Welfare who had been called to testify about her investigation of the juvenile's home and family environment. The foreclosed area of examination was her possible bias arising out of her family relationship with the

[8] Since a transfer hearing does not determine culpability and the issues are not decided by a jury, there is no basis for applying the rule in *State v. McAboy*, ___ W. Va. ___, 236 S.E.2d 431 (1977), that precludes evidence of prior criminal convictions of the defendant in criminal trials.

assistant prosecutor.[9] Significantly, W. Va. Code, 49-5-1(d) (1978), provides that:

> "In all proceedings under this article, the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."

This same subsection states:

> "Except as herein modified, at all adjudicatory hearings, the rules of evidence applicable in criminal cases shall apply, including the rule against written reports based upon hearsay."[10]

We believe that the first of these two quoted provisions manifests an intention on the part of the Legislature to provide a general rule regarding a meaningful hearing with a right to present and cross-examine witnesses, a rule that is applicable to all hearings under W. Va. Code, 49-5-1 (1978), *et seq.* On the other hand, the latter part of W. Va. Code, 49-5-1(d), by only referring to the adjudicatory hearing indicates that these stricter provisions are only applicable to it.

---

[9] In his brief on appeal, the juvenile's attorney asserts that the social worker was a sister of the assistant prosecutor.

[10] The full text of W. Va. Code, 49-5-1(d) (1978), is:

"In all proceedings under this article, the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. In all such proceedings the general public shall be excluded except persons whose presence is requested by a child or respondent and other persons the court finds to have a legitimate interest.

"Except as herein modified, at all adjudicatory hearings, the rules of evidence applicable in criminal cases shall apply, including the rule against written reports based upon hearsay. Unless otherwise specifically provided in this chapter, all procedural rights afforded adults in criminal proceedings shall be applicable. Extrajudicial statements other than res gestae statements by a child under sixteen years of age, made to law-enforcement officials or while the child is in custody and outside the presence of the child's counsel shall not be admissible. A transcript or recording shall be made of all transfer, adjudicatory and dispositional hearings. At the conclusion of any hearing, the court shall make findings of fact and conclusions of law, and the same shall appear of record."

This difference in standards makes eminent sense since it is the adjudicatory hearing that determines the key issue of culpability and carries the right to demand a jury trial. It is the adjudicatory hearing that most closely resembles an adult criminal trial and the Legislature has wisely fashioned for it the procedural safeguards quite analogous to those available in the trial of an adult criminal defendant.

As to those other hearings which are set out in W. Va. Code, 49-5-1 (1978), *et seq.*, and which are heard by the court or referee and do not involve the issue of culpability, the Legislature has provided a more general standard. This standard comports with the traditional rule that where matters are heard before a court without a jury, there is a broader latitude on evidentiary matters, since it is assumed that a judge can weed out the extraneous from the relevant and because of his legal training will not be influenced by otherwise inadmissible evidence. *Arbogast v. Vandevander*, 161 W. Va. 731, 245 S.E.2d 620 (1978). The legislative delineation in this area comports with *Kent's* statement in regard to the requisite formality of a transfer hearing:

> "We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing." 383 U.S. at 562, 16 L.Ed.2d at 97-98, 86 S.Ct. at 1057.

With a meaningful opportunity to be heard including the opportunity to testify and to present and cross-examine witnesses, the failure to give strict adherence to the rules of evidence or to the scope of cross-examination as required in a criminal trial will not be grounds for reversible error at a transfer hearing. *Clemons v. State*, 162 Ind. App. 50, 317 N.E.2d 859 (1974), *cert. denied*, 423 U.S. 859, 46 L.Ed.2d 86, 96 S.Ct. 113 (1975). *Cf. In re Murphy*, 15 Md. App. 434, 291 A.2d 867 (1972); *State v. Piche*, 74 Wash.2d 9, 442 P.2d 632 (1968), *cert. denied*, 393 U.S. 1041, 21 L.Ed.2d 588, 89 S.Ct. 666 (1969).

The record does show that the juvenile's counsel fully cross-examined the social worker in regard to her

investigation of the juvenile's home and family. We do not believe that there was any reversible error in the court's foreclosure of cross-examination as to bias.

For the reasons set out, we affirm the lower court's order.

*Order affirmed.*