# CHARLESTON.

## STATE v. SAULS.

### Submitted May 13, 1924. Decided September 16, 1924.

1. FORMER CASE FOLLOWED.

   A decision affirming points 3, 4, and 5 of the syllabus in the case of *State* v. *Bertha Price* 96 W. Va. 498. (p. 187).

   (Juries, 35 C. J. §§ 237 [1926 Anno] 421; Criminal Law, 17 C. J. § 3401 [1926 Anno]).

2. HOMICIDE—*Showing Held Sufficient for Admission of Statement as Dying Declaration.*

   Where it is shown that deceased received mortal gunshot wounds inflicted by defendant, that he was advised by his physician that he had but a short time to live, that while conscious he declared that he was about to die, and requested that his wife be sent for, and that he desired to make a statement as to how the shooting occurred, and that he died within a few hours, such showing is a sufficient foundation for the admission of his statement as a dying declaration. (p. 188).

   (Homicide, 30 C. J. § 504).

3. FORMER CASE FOLLOWED.

   A decision affirming point 1 of the syllabus in *State* v. *Sauls*, 93 W. Va. 276, 116 S. E. 391. (p. 188).

   (Homicide, 30 C. J. § 504).

4. CRIMINAL LAW—*Testimony at Former Trial of Unavailable Witness Held Admissible, Where Due Diligence Shown.*

   Where defendant has been once tried upon a criminal charge, and subsequent to such trial a witness who testified in defendant's behalf disappears through no fault of defendant, and, although diligently sought by defendant, cannot be found so as to testify at a later trial of defendant upon the same charge, the testimony of such witness given at the former trial is properly admissible. (p. 189).

   (Criminal Law, 16 C. J. § 1557).

5. SAME—*Failure to Locate Witness After Diligent Search Essential to Admission of Testimony at Former Trial; Issuance and Placing Subpoena in Hands of Officer Insufficient Proof of Diligence Rendering Testimony at Former Trial Admissible.*

   Such evidence is not admissible, however, unless it be shown that defendant has not been able to find the witness

after diligent search; the mere issuance of subpoenas and placing them in the hands of the sheriff or other officer to be served, as shown in the instant case, is insufficient proof of diligence in that behalf. (. 189).

(Criminal Law, 16 C. J. § 1557).

6. WITNESSES—*Irrelevant Testimony of Accused on Cross-Examination, Bearing no Relation to Direct Examination, Not Subject to Impeachment or Contradiction.*

Testimony of a defendant upon cross-examination, irrelevant and collateral to the issues involved, and bearing no relation to his evidence given on direct examination, is not subject to impeachment or contradiction by the state. (p. 194).

(Witnesses, 40 Cyc, p. 2769).

7. HOMICIDE—*Instruction That Homicide Presumed Murder in Second Degree Held Abstract and Too Comprehensive.*

As a homicide may or may not be unlawful, an instruction in the trial of one for murder, which charges the jury that a homicide is presumed to be murder in the second degree, without referring to the particular circumstances of the instant case is abstract and too comprehensive. (p. 194).

(Homicide, 30 C. J. § 651).

8. SAME—*Instruction That Jury May Infer Malice, Intent to Kill, and Willfulness, Omitting Circumstances Which Might Rebut Such Inferences, is Erroneous.*

An instruction that the jury may infer malice, the intent to kill, and the willfulness from the unlawful use of a deadly weapon previously obtained, and which omits mention of any of the circumstances of the case which might, in the minds of the jurors, rebut such inferences, is erroneous. (p. 195).

(Homicide, 30 C. J. § 599).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Raleigh County.

John Sauls was convicted of murder in the second degree, and he brings error.

*Reversed, and new trial awarded.*

*McGinnis, Maxwell & McGinnis, H. A. Dunn, C. L. Lilly,* and *A. P. Farley,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General for the State.

MEREDITH, PRESIDENT:

John. Sauls was convicted of murder in the second degree for the killing of E. F. Jones and was sentenced to serve eighteen years in the penitentiary. He seeks a reversal of that judgment. The verdict complained of is the third to be returned against defendant for the offense charged. The first, upon motion, was set aside by the trial court and a new trial was awarded. The second was sustained by the trial court, but was set aside by this court by decision rendered March 6, 1923, and a new trial was again directed. We recited the principal circumstances of the homicide in the opinion then written. *State* v. *Sauls*, 93 W. Va. 276, 116 S. E. 391, and the present record discloses few material changes. Then, as now, defendant claimed that having suddenly discovered his wife and Jones about to engage in sexual intercourse, he inflicted the fatal wounds under the provocation induced by the situation; and also, that deceased having fired the first shot, defendant's action was in self-defense.

The theory of the state in the former case was that the true motive of defendant and his wife was robbery. It sought by its evidence to show that deceased was inveigled by defendant and his wife into the circumstances which resulted in his death.

Repeating briefly a part of the facts stated in the former opinion, deceased, either upon defendant's invitation, or upon his own volition, called at defendant's residence about 7:00 P. M. on the evening of November 12, 1921, Defendant, his wife and children were there. Both men partook of some moonshine liquor, apparently furnished by deceased, and after a few minutes Mrs. Sauls informed defendant that his lawyer, Judge T. J. McGinnis, desired to see him. Defendant left the house, but stopped at a toilet situate in a barn on his premises, a short distance from the house. He was there about five minutes when he saw deceased approaching and he decided to watch unobserved what deceased was about. Mrs. Sauls followed shortly after, and, according to the testimony of the defense, was about to engage in intercourse with Jones, when defendant halted the proceedings, and having been

shot at by the deceased, fired three shots into Jones' body. Mrs. Sauls fled and Jones died shortly after.

A theory of the state, perhaps not relied upon at the former trial, is that defendant had heard reports of his wife's improper relations with Jones, and that his stopping and hiding in the barn was for the purpose of entrapping deceased in his illicit enterprise. If the jury's verdict was reached under proper and sufficient evidence and instructions, it would, of course, be decisive. The question for us is whether it was so arrived at. We will consider certain of the assignments of error in order.

1. The first error urged is that the verdict was not warranted by the evidence and should therefore have been set aside. Defendant argues this point with an eloquent plea that homes be made secure from the violations of seducers, and a defense of him, who, maddened by such unexpected invasion, takes the life of the intruder. However just the principle invoked may be, it suffices for us to say that the evidence upon the conflicting theories presented in this case could only be properly weighed by a qualified jury, and that their judgment has been unfavorable to the accused. If in so deciding defendant had not been prejudiced either by the court's ruling upon the admission or rejection of evidence, or by instruction, we could do nothing else but dismiss at once his objection to the jury's decision.

2. The second objection goes to the empaneling of the jury. Prior to the introduction of evidence on the merits of the case, counsel for defendant moved to quash the jury panel, and upon that motion the court heard the testimony of the Clerk of the Criminal Court and the Sheriff, and examined the writ of venire facias summoning the petit jurors selected to serve at the particular term. It appears that there was no written order of the court authorizing the summoning of the panel, but under verbal agreement with the court and the prosecuting attorney, the clerk, on May 3, 1923, issued the writ calling for seventy jurors to appear at the fourth day of the term, June 14, 1923. The statute, sec. 7, ch. 116, Barnes' Code, 1923, directs the clerk, among other things, to issue a venire facias for thirty jurors, unless the court shall order a greater or less number, and "such writ shall require

the attendance of the jurors on the first day of the court or on such other day thereof as the court or judge may order.'' The point of error, based thereon, is that in the absence of a court order, the clerk was without authority either to order a greater or less number than thirty jurors, or to summon them to appear at any other day than the first day of the term. Happily, this precise question has been decided. At the same term of the same court and by the same panel of jurors, Bertha Price was convicted of second degree murder, and her conviction was reviewed by this court. The identical objections were raised by some of the same counsel who represent defendant Sauls. For reasons which fully appear in in our opinion in the Price case, *State* v. *Price,* 96 W. Va. 498, 123 S. E. 283, we held the objections raised insufficient.

As was also true in that case it is objected that the certificate of the jury commissioners shows that the panel of seventy was drawn from the petit jury box of the circuit court instead of the criminal court, but since in neither case was this objection assigned as a ground for quashing the panel before the trial judge, the point avails nothing now.

> ''The ground on which a challenge to the array of jurors is based must be specifically stated in order that the court and the prosecution may be advised, and the latter may have an opportunity to demur thereto or raise an issue of fact thereon; and the action of the court in disposing of the issue of law or fact made thereon must be made a part of the record before error will lie. *State* v. *Price, supra,* syl. pt. 4.

3. Defendant assails as objectionable the testimony of Dr. Robert Wriston in which he detailed a purported dying declaration of deceased. The doctor did not reduce the declarant's statements to writing, but testified to them from memory alone. The declaration as given in this record is in all substantial respects the same as testified to in the former trial, and an equally sufficient foundation therefor is laid. Joe Williams, who was present and heard deceased make his statement to the doctor, and who testified concerning the same in the prior trial, was not a witness in the present record, but as the doctor testified fully as to deceased's condition and

anticipation of immediate death, the same reasoning which we employed before applies here. The objection that no sufficient foundation for a dying declaration was laid can not be sustained.

4. It is objected that the court erred in admitting the testimony of E. C. Hern. An issue of fact in the case is whether or not money was taken from deceased by defendant after the shooting. On this question several witnesses were called and there was testimony that money had been paid to deceased at his store prior to the homicide, and in defense it was sought to be shown that he made a bank deposit between six and seven P. M. Hern testified that about that time he paid deceased a grocery bill, and saw $40.00 and a roll of ''green-backs'' in deceased's possession. Testimony similar in character was introduced at the prior trial, but defendant then was not permitted to produce evidence relative to the bank deposit. That error was corrected in this · record, and we see no merit in defendant's objection on this score. Defendant says the evidence was improperly offered as rebuttal testimony. This is not true. Counsel for the state, before resting their case, stated that Hern had not arrived, and Mr. Dunn, of defense counsel, expressly agreed that he could be heard later.

5. In the former trial Charley Sanders testified for the defense. He was not present to testify in this record, and counsel for defense offered as evidence the record of his former testimony. It was not offered on the ground that the witness was dead, insane, or out of the state, but that he could not be found. We confess a degree of surprise in finding that there has been some uncertainty about the competency of testimony of this character, especially in the Virginias. So far as deceased witnesses in civil cases are concerned, the law seems settled that their former testimony is proper. *Patterson* v. *Coal Company,* 87 W. Va. 177, 104 S. E. 491; *Carrico* v. *West Virginia Central Ry. Co.,* 39 W. Va. 86, 19 S. E. 571. The opinion in the latter case contains some expressions as to criminal cases also. The Supreme Court of Virginia distinctly holds that in criminal cases, where a witness who formerly testified for the prisoner is dead, the record of such evidence is admissible.

"If a witness for the prisoner in a criminal prosecution has been examined and cross-examined at one trial and dies before 'a second trial of the case, his testimony given on the first trial may be proved by the prisoner on the second trial." *Parks* v. *Commonwealth,* 109 Va. 807, 63 S. E. 462.

Judge Phlegar of that court was apparently at one time disposed to hold oppositely, and so stated his views in the copy of his opinion in *Montgomery* v. *Commonwealth,* appearing in 37 S. E. page 841, and 6 Va. Law Reg. 762, but the portion of the opinion so holding was not included in the official report, 99 Va. 833, and of course is not the rule in that jurisdiction. Consequently, the remarks of the commentator at page 765 of Vol. 6 of the Va. Law Register, disapproving the views expressed, have no present application.

However, it may be said that the rule as to deceased witnesses does not apply to witnesses merely absent, and in view of certain old cases decided in Virginia, the court in the Parks case was careful to mark that distinction. The cases referred to are *Finn's Case,* 5 Rand. 701 and *Brogy's Case,* 10 Gratt. 722.

Finn's case was decided in 1827. Defendant was charged with forgery, and during the course of the trial the attorney for the Commonwealth offered to prove by witnesses what one, Candler, had testified to before the Called Court, Candler having since removed from the jurisdiction. The prisoner objected, but the court overruled the objection and permitted the former testimony to be proved. On writ of error in the Court of Appeals, however, the trial court's ruling was reversed. Citing *Peake* 60, *Phillips* 199, and *Fenwick's Case,* 4 St. Trials, Judge Brockenbrough stated in substance that the rule allowing the introduction of former evidence of witnesses applied only to civil cases, and that so far as he could find, it applied in civil cases only where death of the witness had intervened.

*Brogy* v. *Commonwealth* was decided in 1853. There the question arose whether it was competent for the prisoner to prove what two persons had sworn to on a former trial

of defendant at which the jury disagreed.  As to this the court said:

"This question was presented and directly decided by the General Court as far back as 1827, in *Finn's Case,* 5 Rand. 701."

Citing no additional authority, the court held that the exclusion of the evidence by the trial court was proper.  In this it is very apparent that the court in the Brogy case did not analyze closely the problem before them.  In both Finn's case and Fenwick's case the former evidence sought to be admitted was offered by the prosecution; in Brogy's case it was offered by the prisoner, a difference in situation which raises distinctly different problems.  Article III, Sec. 14, of the Constitution of this State provides, among other things, that the accused in a criminal prosecution shall "be confronted with the witnesses against him."  Other state constitutions have similar provisions, and, construing them, some courts have held that the opportunity at a former trial to cross-examine the witness does not warrant the introduction of his testimony against the accused at a subsequent trial, though the witness be then unavailable. Where, as in the Brogy case and the case at bar, it is the defendant who offers the evidence, no such constitutional objection could possibly be maintained.  In the one case, therefore, the problem of the admissibility of the evidence involves a constitutional question; in the other it is merely a matter of policy or practice as applied to the general rule of evidence excluding hearsay testimony.  We have referred to our decisions sustaining the competency of such testimony in civil cases where the former witness is dead, also to the Virginia case applying the same rule in a criminal case, *Parks* v. *Commonwealth, supra.*  The reasoning of the latter case seems particularly fit, as witness the following language of the court:

"It would indeed present an anomalous state of the law to admit such evidence in civil cases, involving property rights merely, and to apply the rule of exclusion to criminal cases, involving life and liberty, when the introduction of such evidence is not infrequently of controlling weight either in

bringing the guilty to punishment on the one hand,
or of shielding the innocent on the other.''

Admitting, however, the propriety of such evidence where
the witness is dead, a number of courts have refused to extend
the privilege in criminal cases upon any other ground. *Col-
lins* v. *Commonwealth*, 12 Bush. (Ky.) 271; *State* v. *Oliver*,
43 La. Ann. 1003. Others seem to limit such testimony, where
the witness is living and mentally and physically competent,
to cases where it is shown that he is beyond the court's juris-
diction. *Lucas* v. *State*, 96 Ala. 51. We find no sound reason,
however, for such strictness. As stated by Greenleaf (Evi-
dence, 16th ed. § 163-g) death, absence of the witness from
the jurisdiction, and inability to find him are equally suffi-
cient reasons for his non-production. And Prof. Wigmore
(Evidence, 2d ed. Vol. III, §1405) says:

"If the witness has disappeared from observa-
tion, he is in effect unavailable for the purpose of
compelling his attendance."

The Court of Appeals of Texas expressed similar views in
*Sullivan* v. *State*, 6 Tex. App. 319, 339:

"But the question here is, not as to the right to
reproduce the testimony of a deceased witness taken
at a former trial, but the right here claimed and
exercised by the state is to prove the former testi-
mony of a living witness; or, at least, one who is
not shown or claimed to be dead, but who, it is
claimed, is not within the jurisdiction of the court
or its process. It is not perceived that the reason
of the rule which admits proof of what a deceased
witness had on some former occasion, between the
same parties, on an examination into the same crim-
inal charge, on a former trial, testified to, as ad-
missible on a subsequent trial of the same case,
does not apply with equal force to one who, though
not dead, is beyond the reach of the process of the
court. The testimony of a deceased witness is ad-
mitted on the idea that the deceased had been con-
fronted with the witness on the former trial,—
had met him face to face,—and that the witness
had testified before a competent tribunal, under
the sanction of an oath, and an opportunity afford-

ed for cross-examination. ·The inaccessible witness
has been subjected to the same ordeal, the only dif-·
ference being that the one is dead and the other
out of reach.''

Of course, as Prof. Wigmore points out, the court must
be satisfied that the absence is not the result of collusion, and
that the search for the witness has been in good faith, but
when it is so satisfied, we do not see why the testimony is
not as proper as if death had intervened.

If it be true that we thus share a liberal view as to the com-
petency of such testimony, we are by no means inclined to
·admit it unless the proper foundation therefor be laid. We
have noted the possibility of collusion. The safeguard against
such possibility is indicated by a further expression of Wig-
more (§1405):

"Such a disappearance is shown by the party's
*inability to find him* after *diligent* search.''

Here there was no showing that the witness Sanders was
out of the state. Mr. Dunn, of defendant's counsel, stated
he had not known of Sanders being in Raleigh County since
April, about two months before; that he had heard that the
witness and his wife had separated at Sylvit; and that he
had information that he had gone to Charleston in Kanawha
County. Subpoenas were issued to the sheriffs of Raleigh .
and Kanawha Counties. The first was not returned, the sec-
ond was returned by the sheriff of Kanawha County unserved,
accompanied by a letter dated June 6th, to the effect that while
Sanders had been in Charleston, his present whereabouts were
unknown. The clerk of the Criminal Court testified that the
Sheriff of Raleigh County rarely made returns of such sub-
poenas.

Did the defendant show that he was unable to find the wit-
ness? Did he make the diligent search upon which to predi-
cate his offer to prove the former testimony? No one testifies
that any search was made, or in fact that defendant or his
counsel so much as inquired as to Sanders' whereabouts, ex-
cept through the two sheriffs. No attempt was made to secure
information from his wife at Sylvit or from any of his asso-

ciates or friends, so far as the record shows. There was merely a formal summoning through the officers of the two counties, and the statement of counsel that he was ignorant of the witness' whereabouts. Many cases are cited on this question in a note appended to the case of *Smith* v. *State of Georgia,* 15 A. L. R. 490, at pp. 529-538; and from them as well as our own view of the matter, we have little hesitancy in holding that where the efforts to discover the former witness show no more diligence than is evidenced by this record, the defendant can not be said to have established his right to introduce such evidence. The court did not err, therefore, on the showing made in this record, in rejecting the evidence offered.

6. Defendant assigns as error the admission of the testimony of Harvey Templeton, introduced by the state as a rebuttal witness. His statement was that on the day of the shooting, defendant had asked him to go with defendant to Sand Lick for the purpose of bringing back some liquor. The purpose of the state was to contradict the testimony of defendant, on cross-examination, that he had made no such proposal to Templeton. As defendant's direct examination contained nothing concerning the transaction, and as the matter is one wholly irrelevant and collateral to the issues involved, we sustain defendant's argument that defendant's replies on cross-examination were not properly subject to impeachment or contradiction by the state. *Hollen* v. *Crim & Peck,* 62 W. Va. 451, 59 S. E. 172, and cases cited. Defendant's objection to Templeton's testimony should therefore have been sustained, and this point of error is well taken.

7. Defendant objects to state's instructions numbers 1, 2, 4 and 5. In his brief he attacks No. 1 only. That instruction reads:

> "The court instructs the jury that where a homicide is proved the presumption is that it is murder in the second degree."

While possibly not reversible error on the facts presented, we think the above instruction should not have been given. The presumption to which the trial court refers is not a presumption of law, but one of fact, depending for its applicability upon the circumstances of the particular case.

While it may be that where, as in the case at bar, the killing is admittedly intentional and committed with a deadly weapon, there is a proper presumption of fact that the killing is murder in the second degree, nevertheless, to lay down a rule that any homicide, however it may come about, whether by accident, negligence or intention, is presumably murder in the second degree, we regard as violative of ordinary reason. Wharton, Homicide (3d. ed.) §147. In so saying we are not unmindful of the many expressions in our decisions, some of which are practically literal authority for the instruction given in this case. In most of them, however, the facts as here, were such as to give possible warrant for the principle; that is, the killing was admittedly intentional, and with a deadly weapon. But even in certain of those decisions the reasoning has not been free from fault. In *State* v. *Dodds,* 54 W. Va. 289, 46 S. E. 228, it is stated that under our statute, every homicide is prima facie murder in the second degree. Sec. 1, ch. 144, Code, is the statute to which the court referred, and it is authority for no such assertion. After characterizing certain offenses as first degree murder, it says: ''All other murder is murder of the second degree.'' *Homicide* is not necessarily *murder,* and the two should not be confused. The instruction as given is abstract and too comprehensive, and we do not approve it.

The objection to instruction No. 5 is formal and unsupported by argument. However, it was in giving this instruction that the court committed its most grievous error, as will be evident from its language:

> ''The court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that John Sauls with a deadly weapon previously obtained by him unlawfully shot and killed E. F. Jones on the 12th day of Nov. 1921, the jury may infer malice, the intent to kill, and the wilfulness from such unlawful use of such deadly weapon.''

The vice of this instruction was recently exposed in the case of *State* v. *Whitt,* 96 W. Va. 268, 122 S. E. 742, wherein we said:

"Where the facts and circumstances of a homi-
cide case are such that they may, in the minds of
the jurors, rebut a mere inference of malice on the
part of the accused, an abstract instruction to the
effect that it is not necessary that malice should ex-
ist in the heart of the accused toward deceased,
or any particular person, and that deliberation,
willfulness, and malice may be inferred from the
use of a deadly weapon, and which omits to men-
tion any of the various circumstances, tending to
rebut such inference is erroneous."

In that decision and others therein cited we held that it
is improper for the court to charge the jury relative to the
presumption of malice arising from the use of a deadly
weapon, unless it at the same time brings to the jurors' at-
tention the facts and circumstances which tend to rebut the
intent and malice which may be implied from the act. Wholly
ignoring such facts and circumstances, it is abstract and im-
proper, and should not have been given.

8. Defendant's instruction lettered "H", refused, was
covered, so far as it was proper, by instruction "J", given
at his request. He can not complain on that score.

For the reasons set out in paragraphs numbered 6 and 7
in this opinion, we reverse the judgment, set aside the ver-
dict, and award defendant a new trial.

*Reversed and new trial awarded.*