STATE OF WEST VIRGINIA *v.* LAWSEL THARP

(No. 8086)

Submitted April 30, 1935. Decided May 14, 1935.

*Wolverton & Ayres,* for plaintiff in error.
*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Lawsel Tharp, having been convicted of murder in the second degree and sentenced to a term of six years in the penitentiary, prosecutes error.

Sometime after 9:00 o'clock, on Sunday evening, August 19, 1934, Tharp, age nineteen, accompanied by two older companions, left Webster Springs in the former's Ford coupe for Grassy Run, a distance of five miles, where a prayer meeting was in progress. While in a left curve on the grade leading out of Webster Springs, the car, then being operated at a speed of thirty to thirty-five miles per hour, struck and fatally injured a pedestrian, Fred Harper, on his way down into Webster Springs. Harper, who was in the travelled portion of the highway (his left side), either stepped or staggered directly in the path of the car, which was about the center of the road, when the same was six feet from him. Thereupon the defendant cut the course of his car to the left

in an effort to avert an accident. This situation is borne out by the testimony of the occupants of the car and one of the two pedestrians who claim to have been eyewitnesses, and the further fact that Harper was found immediately thereafter, in a coma, lying face down on the center-line, feet towards Webster Springs. The statement of the other eyewitness, a girl fourteen, that the car swerved from a position on the right of the center-line to the left, striking Harper, whom she said was standing two feet below the white line, in view of the physical situation and the general tenor of her testimony, can not be accorded any weight.

The defendant did not stop. Each of the other occupants of the car states that he asked defendant to do so, but did not know whether he was heard. Defendant denies hearing any such requests, if made. However, upon reaching a convenient place, approximately half mile beyond, he turned his car and informed his companions, who thereafter alighted with the idea of catching a ride to Grassy Run, that he was "going back down." Defendant stopped a short distance above the point of the accident. A little later, as he started on down, a member of the department of public safety, thinking that possibly the party striking Harper might have "doubled back", inquired of the defendant if he was not the one who had struck Harper, to which defendant replied that he had not struck anybody. The officer noticing that some of the mud had been brushed from the right front fender, made further inspection, and found a moist quid of tobacco "plastered up against" the windshield, and blood stains on the right post which supports the windshield, "between the top of the car and down where the windshield is, and back along the side of the door just a little piece on the side of the door, and then back on the rear fender where the rear fender comes down on the running board." Defendant was thereupon turned over to the deputy sheriff and the state policeman started up the road in search of the defendant's companions, whom he found about a third of a mile above the point of the accident walking in the direction of Webster Springs. Later that evening the defendant admitted hitting Harper. His explanation on the trial for his actions and statements

immediately following the accident is that he was excited.

In support of the position that Harper had stepped out in front of the car and that the injury was the result of an unavoidable accident and not purposely inflicted, defendant brought out on cross-examination of one of State's witnesses that Harper had been seen on Daly Flats, a short distance above Webster Springs, that afternoon between the hours of two and four—that he was drinking and that he had two pints of liquor in his possession. And while the court later, upon objection, refused testimony of like import, covering the hours of four to six-thirty, on the ground that the same was too remote, Dock Cutlip, a merchant, who had driven up the road a few minutes in advance of defendant, was permitted, after testifying that he had seen Harper a short distance above the point of the accident, walking with his head down, to state that, in his opinion, in view of his knowledge of Harper's habits, Harper was intoxicated. Other witnesses stated that Harper was staggering or zigzagging down the road. There was no evidence that the boys had been drinking, that there was any ill-feeling between defendant and Harper, or that the car was, under the circumstances, being driven at a dangerous rate of speed.

The chief ground of error urged by the defendant is the court's action in instructing the jury, at the instance of the State, to the effect that all homicide is presumed to be murder in the second degree, and, also, that one of the three possible verdicts is murder in the second degree.

Malice, express or implied, is an essential element of murder, both at common law and under the statute. *State* v. *Gilford,* 87 W. Va. 358, 105 S. E. 237. And in the absence thereof, it is error to instruct the jury that they may find the defendant guilty of murder in the second degree. *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769; *State* v. *Sauls,* 97 W. Va. 184, 124 S. E. 670.

Is there any evidence of malice? The mere fact that the car was being driven at thirty to thirty-five miles per hour, or in the center, instead of to the right of the center of the road, is not of itself sufficient to raise an inference of the presence of malice. There is nothing to indicate that Harper

was intentionally run down. In fact the evidence is to the contrary. The defendant has not been shown to have operated the car in such a manner as to evince a depraved mind, heedless of the rights of others. In view of this, the court was in error in instructing the jury in respect to second degree murder.

The judgment will be reversed, verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*