STATE OF WEST VIRGINIA

*v.*

KEVIN REED BANNISTER

(No. 14152)

Decided December 19, 1978.

*H. Truman Chafin* for P. E.

*Chauncey H. Browning*, Attorney General, and *Pamela Dawn Tarr*, Assistant Attorney General, for D. E.

MCGRAW, JUSTICE:

In this appeal[1] the petitioner contends the trial court erred in granting the prosecution's motion to transfer his case from the juvenile jurisdiction to the criminal jurisdiction of the circuit court, thereby permitting him to be treated as an adult instead of as a juvenile.

---

[1] W.Va. Code, 49-5-10(c) [1977] provides for an appeal as of right:

"(c) If the court transfers the case to a criminal proceeding, the court's findings of fact and conclusions of law shall be incorporated within the order. The child shall have the right to appeal to the supreme court of appeals from this order."

The principal issue presented is whether the State met its burden of proving by clear and convincing proof that there are no reasonable prospects for rehabilitating the petitioner through resources available to the juvenile court as required by W.Va. Code, 49-5-10(a) [1977].[2] We answer in the negative and reverse.

The factual background giving rise to this appeal need not be stated in detail; it suffices to say that this case concerns an adolescent, male child who at the age of sixteen years shot and killed his father and then telephoned the police to inform them of what he had just done. He had no previous juvenile or criminal record.

All the parties agreed that the juvenile law as amended in 1977 was the law applicable when the transfer hearing was held in November, 1977. After that hearing, the trial court entered an order setting forth the factual finding and legal conclusion justifying the transfer in the following language:

> [I]f the defendant, in fact, was suffering from a mental disease or defect which caused him to lack the capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law, then he is likely again to suffer such a "psychotic episode" or other mental aberation which will cause him again to commit violent acts in the future, as testified by

---

[2] That provision states in relevant part:

(a) Upon motion of the prosecuting attorney, the recommendation of the referee or upon its own motion, the court may at the time specified in section nine of this article transfer to a criminal proceeding the case of a child who is alleged to have committed, on or after his sixteenth birthday, an offense which, if committed by an adult, would be a felony if there is clear and convincing proof that: (1) The offense allegedly committed by the child is one of violence or evidences conduct which constitutes a substantial danger to the public and (2) there are no reasonable prospects for rehabilitating the child through resources available to the court under this article. With reference to such rehabilitation prospects the court shall consider the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and the like. The burden of proof of such determination shall rest on the petitioner. . . .

one of the psychiatrists in the latter's deposition introduced into evidence at said hearing and accordingly, and for such reason, that there are no reasonable prospects for rehabilitating the defendant through any resources available to this Court under Article 5, Chapter 49, of the West Virginia Code, as amended.

It is, of course, well recognized that findings of fact made by a trial court will not be reversed or set aside on appeal unless its findings are clearly wrong, syl. pt. 1, *State ex rel. Postelwaite v. Bechtold,* ____ W. Va. ____, 212 S.E.2d 69 (1975); syl. pt. 1, *State ex rel. Harrison v. Coiner,* 154 W. Va. 467, 176 S.E.2d 677 (1970), but "[w]hen the findings of fact of a trial court ... are against the plain preponderance of the evidence, are not supported by the evidence, are clearly wrong, or are the result of a mistaken view of the evidence, such findings will be set aside or reversed by this Court on review." Syl. pt. 5, *State ex rel. Postelwaite v. Bechtold, supra.*

Whether the finding and conclusion of the trial court incorporated in the transfer order[3] is supported by the evidence requires a brief review of the evidence adduced in the transfer hearing.

The evidence relied on by the trial court was contained in the evidentiary deposition of the State's only psychiatrist who examined and evaluated petitioner in January of 1977 for the purpose of preparing a report for the use by the State. The witness testified that:

> The probabilities of psychotic episodes repeating themselves are good. If one has been associ-

---

[3] W.Va. Code, 49-5-10(c) [1977], *supra,* n. 1, provided that the court's findings of fact and conclusions of law had to be incorporated in the transfer order. *See also* syl. pt. 2 & 3 of *State ex rel. E. D. v. Aldredge,* ____ W. Va. ____, 245 S.E.2d 849 (1978); A 1978 amendment to the juvenile law, W. Va. Code § 49-5-10(e) [1978] provides:

> If, after a hearing, the court directs the transfer of any juvenile proceeding to criminal jurisdiction, it shall state on the record the findings of fact and conclusions of law upon which its decision is based or shall incorporate such findings of fact and conclusions of law in its order directing transfer.

ated with a violent act, the likelihood, I think, exists that another psychotic episode is possible. I can't say whether another psychotic episode would be associated with a violent act or not. I can say if there has been one, there generally will be more.

Arrayed against this evidence is the testimony of three psychiatrists. The first such witness who began treating the petitioner in December of 1975 testified that the petitioner was under the influence of a psychotic episode at the time the act was committed and was not criminally responsible for his conduct. He further testified that the petitioner is not currently suffering any emotional disorder of any kind, is not a threat to or a menace to society in any way, and does not require institutionalized treatment. The expert also testified that there was no indication or evidence to suggest that petitioner will resort to violent behavior in the future, that he is continuing treatment and his prognosis is excellent.

When questioned about the prospects for rehabilitating petitioner, the expert stated:

To say define rehabilitation in this case, if we are talking about rehabilitation from the attack ... I have not seen any evidence in the two years I have worked with [petitioner] that he has any problems in that area. I think rehabilitation has already occurred. As far as learning how to deal with the stresses and the inner conflict which brought on this horrible attack, you have to remember this is based on a relationship of sixteen years this young man with his father. I doubt that he would be involved in such a relationship again as he had with his father or that he will be presented with any circumstances that would cause such an attack to occur.

Shortly after the unfortunate event, petitioner voluntarily admitted himself to a hospital for evaluation and treatment. During the approximately four months stay, he received adolescent milieu therapy and various other

modes of group therapy, including family therapy, along with intensive individual psychotherapy conducted by a psychiatrist. Upon discharge from the hospital his prognosis was good, and it was anticipated that he would be able to function normally in school and with his family.

The deposition testimony of the hospital psychiatrist was in agreement with petitioner's first expert witness. When asked if petitioner was cured, he stated:

> I think that the acute psychotic process is resolved, and cure is the word for that. The underlying emotional problems that led up to the psychological process are being healed or cured. This type of process, curing, healing, process is a long term one, one that was initiated by [petitioner's] own basic healthy internal mechanisms prior to his arriving at the hospital, was I think accelerated during his hospitalization, and has continued in his out-patient treatment following his discharge here.

He also testified:

> The likelihood that [petitioner] would ever have a recurrence of such a psychotic episode is practically zero. The circumstances, the intensity of feelings that were in the relationship between [petitioner] and his father could not be duplicated by any other relationship [his] life. The intensity of that relationship, the fear that [he] maintained in the relationship with his father, the fear for his own safety in life could not be reduplicated out of a relationship formed with another individual, particularly not another individual later in [his] life.

The deposition of a third psychiatrist who examined the defendant on motion of the State was introduced in evidence. This witness concluded the petitioner was suffering from a psychotic episode when the shot was fired but found no psychotic symptoms present at the time of the examination. He recommended that petitioner continue his psychiatric treatment as did the other psychiatric witnesses.

Four lay witnesses also testified on petitioner's behalf, including his high school principal, who testified that petitioner was a model student who got along well with his classmates while attending high school, that he earned his high school diploma following the shooting, and that he had enrolled for the fall semester at West Virginia University.

From this review of the evidence on the rehabilitation issue, we conclude that the State did not meet its statutory burden of showing by clear and convincing evidence that there are no reasonable prospects for rehabilitating the child through resources available to the court. The finding of the trial court is clearly contrary to the weight of the evidence adduced in the transfer hearing and must be reversed. The issue for the trial court was whether there were reasonable prospects for rehabilitating the juvenile through available resources; the issue was not whether the petitioner was rehabilitated or whether there was a possibility that the child might commit another act of violence.

Petitioner has thus far been treated successfully through resources available to the court. The 1977 juvenile legislation, as we held in syl. pt. 2 of *State ex rel. Smith v. Scott,* _____ W. Va. _____, 238 S.F.2d 223 (1977), "manifested an intention that juveniles should, in the ordinary case, be subject to juvenile court jurisdiction. Transfer, therefore, should be the exception and not the rule." A proper spirit of optimism toward petitioner's rehabilitative prospects thus dictates he be afforded rehabilitation and treatment within the juvenile justice system rather than be punished as an adult.

The State, in its brief to this Court, argues, however, that even if the trial court erred in transferring petitioner's case to the criminal jurisdiction of the circuit court under W.Va. Code, 49-5-10 [1977], petitioner is only entitled to a new or reconstructed transfer hearing under the 1978 amendment to W.Va. Code, 49-5-10.[4] Under

---

[4] This section, effective ninety days from passage on March 11, 1978, permits transfer of criminal proceedings in a broader class of

that law a child may be transferred if there is probable cause, as there is in this case, to believe that the child has committed the crime of murder. Thus, the argument goes that this Court should examine the evidence adduced below in light of now existing law and affirm the juvenile court order of transfer.

We do not agree that the 1978 amendment to the transfer section of the juvenile law is applicable to cases where the act or offense alleged committed occurred prior to the effective date of amendment. W.Va. Code, 49-5-10 [1978] applies only to those juvenile cases where the alleged criminal act was committed after the effective date of the statute. This ruling is consistent with the general rule in this jurisdiction that there is a presumption that a statute is intended to operate prospectively, unless it appears, by clear, strong and imperative words or by necessary implication that the Legislature intended to give the statute retroactive force and effect, *See e.g.*, syl. pt. 1, *Loveless v. State Compensation Commissioner*, 155 W. Va. 264, 184 S.E.2d 127 (1971), and it is in accord with the directive of the Legislature embodies in W.Va. Code, 2-2-10(bb) [1973] which states that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective."

In *Gibson v. Bechtold*, ___ W. Va. ___, 245 S.E.2d 258 (1978), it was held that a juvenile was entitled to the benefit of statutory provision, enacted subsequent to the date of the alleged offense, which enlarged the jurisdic-

---

cases than authorized by the law enacted in 1977. Pertinent here is W.Va. Code, 49-5-10(d)(1) [1978] which states:

"The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is probable cause to believe that:

"The child has committed the crime of treason under section one, article one, chapter sixty-one of this code; the crime of murder under sections one, two and three, article two, chapter sixty-one of this code ... and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry ...."

tion of the juvenile court. Under the *Gibson* decision, the juvenile court in this case was correct in concluding the 1977 juvenile law was applicable to petitioner's case even though the offense allegedly committed occurred in 1975. To now apply the 1978 amendments to the detriment of the petitioner as urged by the State might well constitute unconstitutional *ex post facto* legislation, but we need not reach that question.

For the foregoing reasons we reverse the juvenile court order transferring the case to criminal proceedings, and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*