273 S.E.2d 578 (1980)
STATE of West Virginia
v.
R. H.
No. 14386.
Supreme Court of Appeals of West Virginia.
December 19, 1980.
*579 Howard M. Persinger, Jr., Williamson, for plaintiff in error.
Chauncey H. Browning, Atty. Gen., David P. Cleek, Asst. Atty. Gen., Charleston, for defendant in error.
McGRAW, Justice.
In this appeal from an order of the Circuit Court of Mingo County, the appellant, R. H., challenges the transfer of his case from the court's juvenile jurisdiction to its criminal jurisdiction. He contends, among other things, that the lower court erred in holding the 1978 amendments to the juvenile law applicable to the transfer hearing as well as to subsequent proceedings and in admitting prior testimony of several witnesses. The appellant also contends that the 1978 amendments to the juvenile law are unconstitutional in that they violate due process requirements. We find merit in several of the appellant's contentions and we reverse the order of the circuit court.
The appellant, then seventeen years old, was charged by delinquency petition with the murder on August 31, 1977, of Pearlis Daugherty, an act which if committed by an adult would constitute a felony by virtue of W. Va. Code § 61-2-1 (Replacement Vol. *580 1977). On September 17, 1977, the State filed a motion requesting transfer of the juvenile proceeding to the criminal jurisdiction of the circuit court, pursuant to Article 5 of the 1977 juvenile law (hereinafter the 1977 Act) which was then in effect, specifically W. Va. Code § 49-5-10 (Cum.Supp.1977). The transfer hearing was set for September 24, 1977, the same date set for the appellant's preliminary hearing, but upon the motion of the State, the transfer proceeding was continued generally. In the meantime, the grand jury had returned an indictment against the appellant, charging him with the crime of murder.
Before any further proceedings were conducted with respect to the transfer motion, the legislature, on March 11, 1978, amended W. Va. Code §§ 49-5-1 to 17, dealing with juvenile proceedings. On July 17, 1978, on which date the 1978 amendments were in force and effect, the State filed an amended motion for transfer and a hearing was set for July 27, 1978. After taking the testimony of one witness in the form of a deposition at the transfer hearing, the court, uncertain as to whether the 1977 Act or the 1978 amendments should control the proceedings, requested that the parties brief the issue and continued the hearing until August 24, 1978.
At the transfer hearing, the court ruled, over the appellant's objection, that the 1978 amendments were applicable to the transfer hearing and to all subsequent proceedings. The appellant's counsel announced that he could not permit the appellant to testify in his own behalf at the hearing because the 1978 amendments did not preclude the use of such testimony at subsequent proceedings as did the 1977 Act.[1] On November 15, 1978, the court granted the State's motion for transfer. The order for transfer contained findings of fact and the court's conclusion that the State had shown by clear and convincing proof that there was probable cause to believe appellant had committed the offense and that there were no reasonable prospects for the rehabilitation of the child. It is from this order that this appeal is taken.

I
The appellant first argues that the 1978 amendments to section 10 of the juvenile law, respecting transfer of juvenile proceedings to criminal jurisdiction, are unconstitutional in that they do not afford appellant minimum due process protections. Specifically, the appellant alleges that because W. Va. Code § 49-5-10 (Cum.Supp.1978) does not require the court to find that there are no reasonable prospects for rehabilitation of the child through the resources available to the court, it denies appellant a meaningful hearing as required by Kent v. U. S., 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and by our decision in State v. McArdle, 156 W.Va. 409, 194 S.E.2d 174 (1973). We do not agree.
Both Kent and McArdle, supra, recognize that due process requires a juvenile be afforded a meaningful transfer hearing before the court can waive the juvenile jurisdiction.[2] The United States Supreme Court appended to the Kent decision a policy memorandum setting out certain factors to be considered by a judge in reaching a determination as to whether the court should relinquish its juvenile jurisdiction in favor of criminal jurisdiction. We adopted the Kent criteria as providing guidelines to judges attempting to resolve the question of whether to transfer juvenile proceedings under our juvenile law in State ex rel. Smith v. Scott, W.Va., 238 S.E.2d 223 (1977). We take this opportunity to reiterate those guidelines:

*581 The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following;
1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
2. Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.
3. Whether the alleged offense was against persons or against property, greater weight being given to the offenses against persons especially if personal injury resulted.
4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment ...
5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in [another court].
6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude, and pattern of living.
7. The record and previous history of the juvenile including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.
8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services, and facilities currently available to the Juvenile Court. 383 U.S. at 566-567, 86 S.Ct. at 1060. (emphasis added)
In Smith we noted that while the legislature may statutorily require juvenile courts to consider certain factors in deciding to grant a motion for transfer, such mandate does not preclude consideration of other criteria. Of course, at the time of our decision in Smith, the 1977 Act was in force and effect and a finding by the juvenile court that there were no reasonable prospects for the child's rehabilitation was statutorily mandated under the Act as a prerequisite to transfer of jurisdiction. W. Va. Code § 49-5-10(a) (Cum.Supp.1977). The 1978 amendments to section 10 did not specifically require such a finding. We do not think that the action of the legislature in omitting from the juvenile transfer statute certain of the Kent standards precludes consideration of those factors. Rather we see the Kent standards as a complement to our juvenile statute and equally applicable under the 1978 amendments as we found them to be under the 1977 Act in Smith.
The Kent criteria "have largely set the standards for other courts and ... have been the model for statutes governing transfer hearings in other jurisdictions, (citations omitted)" State ex rel. Smith v. Scott, supra. They are viable concerns of any juvenile court faced with the decision of whether to relinquish juvenile jurisdiction, especially in view of the rehabilitative purpose of our juvenile law and the intent of the legislature that transfer should be the exception and not the rule. See W. Va. Code § 49-1-1(a) (Cum.Supp.1978); State ex rel. S.J.C. v. Fox, W.Va., 268 S.E.2d 56 (1980); State v. D.W.C., W.Va., 256 S.E.2d 894 (1979); State v. Bannister, W.Va., 250 S.E.2d 53 (1978); State ex rel. Smith v. Scott, supra; State ex rel. Harris v. Calendine, W.Va., 233 S.E.2d 318 (1977). The legislature has recognized the importance of the Kent criteria by incorporating several of them into the 1978 juvenile law.[3] This Court has expressly recognized other of those factors to be valid considerations in determining whether to waive juvenile jurisdiction. *582 [4] There is no indication in the 1978 amendments to the juvenile law that the legislature intended to weaken the importance of these factors in a juvenile court's decision to relinquish jurisdiction. While the 1978 transfer section does not expressly require a finding that no reasonable prospects for the rehabilitation of the child exist before the court may transfer the proceedings to the criminal division, neither does it preclude the juvenile court from considering evidence which shows that the retention of juvenile jurisdiction will accomplish the rehabilitative purpose of the juvenile law. Indeed, W.Va. Code § 49-5-10(d) (Cum.Supp.1978), requiring the court to consider, among other factors, the child's home environment, school experience, mental, physical and emotional development and "similar personal factors", seems to encourage the court to consider precisely this sort of evidence. See State v. C.J.S., W.Va., 263 S.E.2d 899 (1980).
The factors enumerated in Kent do not conflict with the provisions of the juvenile transfer section as amended. Indeed, the statute and the Kent criteria appear to be complementary, rather than contradictory. The statute sets forth the legislatures' absolute minimum requirements for transfer. The standards in Kent and Smith enhance that legislative determination by providing the juvenile courts with significant guidelines which insure a meaningful transfer hearing as required by due process. We find no conflict between the provisions of W. Va. Code § 49-5-10 (1978) and the standards for a meaningful hearing set forth in Kent and approved by this Court in Smith which would preclude consideration of those criteria by a juvenile court in determining whether to waive juvenile jurisdiction. Consequently, we conclude that W. Va. Code § 49-5-10 does not violate the due process provisions of our state and federal constitutions because the juvenile court must vindicate the standards set forth by the United States Supreme Court. W.Va. Const. Art. I, § 1.

II
The appellant also contends that the circuit court committed prejudicial error in holding the 1978 amendments to our juvenile law applicable to the transfer hearing as well as to all subsequent proceedings in the case. The appellant argues that because the underlying offense with which he was charged was committed at a time when the 1977 Act was in effect, the 1978 amendments violate ex post facto prohibitions in our state and federal constitutions and are unconstitutional with respect to him.
We note first that our disposition of this issue with respect to the transfer hearing is controlled by our holding in State v. Bannister, W.Va., 250 S.E.2d 53 (1978). There we held that W.Va. Code § 49-5-10 (Supp.1978), governing the transfer of juvenile proceedings to criminal jurisdiction, applies only to those juvenile cases where the alleged criminal act was committed after the effective date of the 1978 amendments. Syl. pt. 2, State v. Bannister, supra. We must conclude therefore that the circuit court committed prejudicial error in applying W.Va. Code § 49-5-10 (Supp.1978) to the transfer proceeding in the appellant's case and we reverse the ruling of the juvenile court on that issue.[5]
In Bannister, we found it unnecessary to discuss the possible ex post facto consequences of retroactive application of the amended transfer provision to Bannister's hearing. In view of our holding in that case, we need not reach the question here with respect to the juvenile court's ruling that the 1978 amendments were applicable to the appellant's transfer hearing. Bannister is dispositive of that issue. The appellant, *583 however, also argues that the circuit court's ruling that the entire 1978 law was applicable to all subsequent proceedings in his case renders unconstitutional the 1978 amendments as ex post facto legislation. We respond to the appellant's argument to clarify our view of the ex post facto prohibition.
Both the state and federal constitutions prohibit the enactment of ex post facto laws by the State.[6] On their face, these constitutional provisions prohibit only the enactment of retroactive legislation and do not apply to judicial action. See Marks v. U. S., 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). The United States Supreme Court has recently held, however, that even though the Ex Post Facto Clause is not directed at judicial action, the principle on which it is based is a fundamental concept of constitutional liberty embodied in the due process clauses of the Fifth and Fourteenth Amendments. Marks v. U. S., 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). See also, U. S. v. Brown, 555 F.2d 407 (5th Cir. 1977). Thus, due process places a limitation on retroactive judicial application of statutory enactments which precludes courts from effecting a result which the legislature is barred from achieving by the Ex Post Facto Clause. See Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).
The appellant does not argue here that the 1978 amendments in and of themselves constitute ex post facto legislation in violation of our federal and state constitutions. Even though appellant awkwardly frames his contention in terms of the statute itself being unconstitutional, his true argument is that the circuit court's ruling, applying the 1978 amendments to the appellant's case, violated the ex post facto principle inherent in our concept of due process and was therefore void. Thus, even if we find the circuit court erred in its application of the statute, it is only the action of the circuit court which is invalid and not the provisions of the 1978 juvenile law. We turn now to the substance of the appellant's argument.
At the transfer hearing, the juvenile court determined that the 1978 amendments to the juvenile proceedings statute were "purely procedural" in nature and, on the whole, ameliorative to the juvenile. The lower court concluded, therefore, that its application of the amended statute in toto to the proceedings in the appellant's case was not within the ex post facto prohibition. The juvenile judge apparently considered the briefs submitted on the issue by both parties, paying particular attention to the specific statutory changes which the appellant cited as affecting his rights to his detriment, before reaching his determination. While we commend the lower court for its conscientious approach to the question, we must conclude that its holding that the entire 1978 law was applicable to all proceedings involving the appellant on the underlying murder charge is too broad to withstand the appellant's challenge.
Because the appellant's challenge to the circuit court's ruling is grounded on the ex post facto principle embodied in the federal and state due process provisions, we must analyze that ruling in the light of traditional ex post facto cases which relate generally only to retroactive legislation. See Marks v. U. S., supra; U. S. v. Brown, supra. The early classic definition of an ex post facto law was set forth by the United States Supreme Court in Calder v. Bull, 3 Dall. 386, 3 U.S. 386, 1 L.Ed. 648 (1798):
(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the *584 law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender. 3 Dall. at 390, 3 U.S. at 390.
Mere procedural changes which affect only the mode of trial or the rules of evidence and which do not work to the substantial disadvantage of an accused are not customarily held to be within the ex post facto prohibition. Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925). However, procedural changes can be ex post facto depending on their effect on the accused. U. S. v. Henson, 486 F.2d 1292 (D.C.Cir. 1973).
Much time and energy has been devoted by the courts to developing a standard which succinctly enunciates the distinction between those changes in procedure which may be applied retroactively to persons being tried for an act which was committed before the effective date of the change and those which are within the ex post facto prohibition. In Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882), the Supreme Court discussed this distinction at length, concluding that the ex post facto prohibition extends to any alteration, even one labeled procedural, "which in relation to the offense or its consequences, alters the situation of a party to his disadvantage". It has also been stated that no substantial right which the law gives an accused at the time of the commission of the offense to which his guilt relates can be taken away from him ex post facto, merely by calling it a law of procedure. Id. 2 S.Ct. at 453; Frisby v. U. S., 38 App.D.C. 22 (1912). Kring also noted that insofar as a law operates to take away or impair a defense available to the accused under the law at the time of the offense, it violates the ex post facto prohibition. 107 U. S. at 229, 2 S.Ct. at 449; Beazell v. Ohio, supra. The only attempt at elucidating this standard in our jurisdiction has been the statement that retroactive application of a new punishment which operates "to the detriment or material disadvantage of the wrongdoer" is within the ex post facto prohibition. State v. Fisher, 126 W.Va. 117, 125, 27 S.E.2d 581, 585 (1943). Thus, the distinction between those procedural changes which are prohibited by the ex post facto principle and those which may be applied retroactively appears to be based on the effect of the alteration on the substantive rights of the accused.
These general observations, however, provide only a standard by which the courts are to be guided in their determination of which statutory changes may be applied retroactively to an accused.
Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree ... Beazell v. Ohio, supra, 269 U.S. at 171, 46 S.Ct. at 69.
This court has recognized the problems inherent in attempting to label such changes as "procedural" or "substantive" with respect to their retroactive application to criminal defendants. In Pnakovich v. SWCC, W.Va., 259 S.E.2d 127 (1979) we noted:
In practice, very few changes [to criminal statutes] are perceived to be merely procedural because of the nature of the right which the criminal statute alters. If the procedural change is not perceived to deny the accused a defense available under the laws at the time of his offense, or operates only in a limited and unsubstantial manner to his disadvantage, then the provision may be applied retroactively. Thus it may be seen that limitations on retroactive criminal legislation are particularly severe, while those in the civil area turn upon the amount of substantial reliance. 259 S.E.2d at 131.
This is no less the case when the proceedings involve juveniles brought before the court by way of delinquency petitions alleging the commission of criminal acts.
The conclusion we draw from this discussion is that because statutory changes which for other purposes are characterized *585 as procedural may affect substantive rights of persons accused of crimes or charged with delinquency, a determination of whether those alterations may be applied retroactively must be based upon a particularized inquiry where the change affects substantive rights of the accused or the juvenile. When a juvenile court seeks to hold a comprehensive statute such as our juvenile proceedings law applicable to all proceedings which arose as the result of the commission of a criminal act at a time when that statute was not in effect, such a particularized determination becomes almost impossible. The record here does not demonstrate that the juvenile court considered every one of the changes effectuated by the legislature in 1978 with respect to its effect on the appellant's substantive rights. We therefore vacate the ruling of the circuit court on this point and remand the case for further proceedings.
The State further maintains that even if the juvenile court erred in applying the 1978 amendments to our juvenile law to the proceedings in the appellant's case, the error was not prejudicial because the outcome would not be affected by application of the 1977 Act. We note that the juvenile judge did permit the introduction of evidence regarding the reasonable prospects of rehabilitation for the child and made findings of fact and conclusions of law thereon. Additionally, we commend the juvenile judge for his careful analysis of Kent, supra, and his conclusion that the standards enunciated therein were applicable under both the 1977 Act and the 1978 amendments. However, we cannot agree with the State's contention that the court's ruling that the 1978 amendments were applicable to the transfer proceeding did not prejudice the appellant.
The 1977 Act provided that no testimony of the child given at the transfer hearing could be admitted into evidence at any subsequent criminal or adjudicatory proceeding. W.Va. Code § 49-5-10(a) (Cum.Supp.1977). When the statute was amended in 1978, this provision was omitted. Because the 1978 amendments were held to be applicable to the proceedings below, the appellant declined to testify in his own behalf at the transfer hearing. We think it is obvious that the court's erroneous application of the 1978 amendments resulted in prejudice to the appellant in that it deprived him of his statutory right under the 1977 Act to testify in his own behalf at the transfer hearing without fear of having that statement used against him at subsequent proceedings. The error not only deprived the appellant of the opportunity to present his own case and to rebut in his own words the testimony of hostile witnesses, but it also deprived the court of the opportunity to arrive at a meaningful determination of whether to waive juvenile jurisdiction by considering the appellant's testimony in conjunction with that of the other witnesses and by judging the demeanor and credibility of the appellant on the stand. This is not to say that we are of the opinion that had the appellant testified, the outcome of the transfer hearing would have been different. Indeed, we have no indication as to what the appellant's testimony would have been had the 1977 Act been properly applied. We simply think that where an error of the juvenile court in determining which of two statutory enactments applies to transfer proceedings results in the refusal of the juvenile to testify in his own behalf because the statute erroneously applied deprives him of a substantial statutory protection granted him under the other statute, the error is prejudicial to the juvenile and will be reversed on appeal.

III
The juvenile court also erred in admitting, over objection, the prior testimony of the prosecution's witness, Ruth Daugherty, to prove probable cause under § 10 of the 1978 juvenile law. At the preliminary hearing held on September 24, 1977, Ms. Daugherty, wife of the decedent, had testified extensively as to the circumstances of the shooting of her husband on August 31, 1977. The witness was subpoenaed by the State to testify at the transfer hearing on August 24, 1978, but she did not appear. The State informed the court that an officer had gone *586 to Ms. Daugherty's home that morning but had received no response after knocking at the door for ten to fifteen minutes. The State moved that her prior testimony at the preliminary hearing be admitted into evidence due to the unavailability of the witness. The motion was granted by the court.
The well-settled rule in West Virginia is that sworn testimony taken from a former trial or proceeding is admissible if there is (1) an inability to obtain the testimony of the witness, (2) an opportunity to cross-examine the witness in the former proceeding, and (3) a substantial identity of the parties and the issues. State v. Dawson, 129 W.Va. 479, 40 S.E.2d 306 (1946). The appellant admits that he was afforded an opportunity to cross-examine the witness at the preliminary hearing and that the parties and issues were substantially the same at the transfer hearing. The appellant's sole contention is that there was no evidence that the witness was unavailable to testify and that the former testimony was therefore inadmissible.
Where the witness is unavailable by reason of death or insanity or where the witness is beyond the scope of state process or where the whereabouts of the witness are unknown and cannot be discovered by diligent search or where the witness cannot remember, the prior testimony of the witness is admissible in a subsequent proceeding. See State v. Spadafore, W.Va., 220 S.E.2d 655 (1975); State v. Dawson, supra; Show v. Mount Vernon Farm Dairy Products, Inc., 128 W.Va. 598, 37 S.E.2d 459 (1946); State v. Sauls, 97 W.Va. 184, 124 S.E. 670 (1924). Where the prior testimony is sought to be introduced on the ground that the witness's whereabouts are unknown, such evidence is not admissible unless it is shown that diligent efforts to secure the attendance of the witness were made unsuccessfully. State v. Sauls, supra. Here, the only evidence that the witness was unavailable at the transfer hearing was the unsworn statement of the prosecuting attorney that an officer had been sent to the witness's home on the morning of the hearing and had knocked on her door for ten to fifteen minutes without receiving a response. There is no indication that any other attempt was made to find the witness or to question her relatives and friends as to her whereabouts. On this record we cannot say it was shown that a diligent search was made to find the witness and we must conclude that the State did not lay a proper foundation for the introduction of the prior testimony of Ms. Daugherty.
In view of the prejudicial effect of the juvenile court's erroneous ruling that the 1978 amendments to W.Va. Code § 49-5-1 et seq. were applicable to all proceedings below and the erroneous admission of prior testimony of the prosecution's witness at the transfer hearing, we must conclude that the juvenile court committed reversible error. This conclusion renders unnecessary our determination of the appellant's other alleged evidentiary errors. We reverse the order of the Circuit Court of Mingo County transferring the proceedings in the appellant's case from the juvenile jurisdiction to the criminal jurisdiction and remand the case to that court for further proceedings in accordance with the principles enunciated herein.
Reversed and remanded.
NOTES
[1] W. Va. Code § 49-5-10 (Cum.Supp.1977) provided that "[t]estimony of a child at a transfer hearing shall not be admissible in a criminal proceeding or at the adjudicatory hearing ..." The 1978 amendments to this section contain no similar provision.
[2] Due process, in such hearings requires that the court afford adequate notice to the juvenile of the hearing, appoint counsel in the case of indigency and issue a statement of the reasons for the court's relinquishment of jurisdiction. Kent, supra; McArdle, supra; State ex rel. Smith v. Scott, W.Va., 238 S.E.2d 223 (1977).
[3] W. Va. Code § 49-5-10(d) (Cum.Supp.1978) permits transfer of the proceedings to the criminal jurisdiction of the circuit court only after the juvenile court has considered "the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors..."
[4] In State ex rel. Smith v. Scott, supra, we recognized that the seriousness of the offense, the element of violence, whether the offense was against persons or property, the maliciousness and deliberateness of the act, and previous acts of delinquency were all relevant factors to be considered by the juvenile court in making the determination.
[5] We note that our decision in Bannister was rendered subsequent to the juvenile court's ruling and the filing of appellant's petition for writ of error in this case.
[6] U.S.Const. Art. I, § 10, cl. 1

"No State shall ... pass any Bill of Attainder, ex post facto law, or law impairing the Obligation of Contracts, ..."
W.Va.Const. Art. III, § 4
"... No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed."